## CALHOUN v. VIOLET.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 180. Submitted January 20, 1899. — Decided February 20, 1899.

The provisions in the act of March 2, 1889, c. 412, 25 Stat. 980, 1005, with regard to honorably discharged Union soldiers and sailors were intended only to give them an equal right with others to acquire a homestead within the territory described by the act, but did not operate to relieve them from the general restriction as to going into the territory imposed upon all persons by the provisions of the act.

THE case is stated in the opinion.

*Mr. Calvin A. Calhoun* in person for appellant.

No appearance for appellee.

MR. JUSTICE WHITE delivered the opinion of the court.

The plaintiff sued to recover a described piece of land upon the assumption that the defendant held it in trust for him. The prayer of the petition was that the trust be recognized and the defendant be decreed to make conveyance of the land. A demurrer was interposed, which was sustained by the trial court, and the suit was thereupon dismissed. On appeal to the Supreme Court of the Territory, the action of the trial court was affirmed. The present appeal was then taken, and the issue which arises is this: Did the court below err in deciding that the petition of the plaintiff did not state a cause of action?

The facts alleged in the petition and shown by the exhibits which were annexed to it are as follows: The plaintiff Calhoun, an honorably discharged soldier, who was in all general respects qualified to claim a homestead under the law, Rev. Stat. §§ 2304 *et seq.*, seeking to avail himself of his right, entered, on April 23, 1889, at the United States land office at

Guthrie, Oklahoma, " lots 6, 7, 8, 9 and 10 of section 3, township 11 north, range 3 west, in the aforesaid land district." The petition alleged that Calhoun had performed all the subsequent acts required by law to make the entry valid. On May 21, 1889, Theodore W. Echelberger contested the entry on the ground that Calhoun had come into the Territory of Oklahoma before the time when by law he had a right to do so, in violation of the statute of the United States and of the proclamation of the President issued in pursuance thereof. 25 Stat. 980, 1004; *Payne* v. *Robertson*, 169 U. S. 323; *Smith* v. *Townsend*, 148 U. S. 490. On the 27th of May, 1890, James McCornack also filed a contest against both Calhoun and Echelberger, alleging that they were both disqualified because they had during the prohibited period entered the Territory. On June 29, 1890, contest was also filed by Thomas J. Bailey, charging the illegality of the claims of Calhoun, Echelberger and McCornack, averring that he, Bailey, was the first legal settler on the land and entitled to it. On January 25, 1890, one Linthicum filed a contest against lot No. 10, embraced in the entry made by Calhoun, on the ground that that lot was on a different side of the Canadian River from the balance of the land embraced in the entry, and as the Canadian River was a meandering stream, the entry could not lawfully cover land situated on both sides thereof, hence lot 10 had been illegally included in the Calhoun entry.

In February, 1890, the Commissioner of the General Land Office instructed the local land office to suspend, among others, the entry made by Calhoun, because the land covered by it was on both sides of a meandering stream, and hence entry thereof had been improperly allowed. The instruction transmitted to the local officer concluded as follows: " You will notify the claimant of this fact " (that is, of the suspension of his entry) " and allow him thirty days from receipt of notice in which to elect which portion of his claim he will relinquish, so that the land remaining will be confined to one side of such stream. Should any of the parties desire to do so, he may relinquish his entire entry; in which event an applica-

tion to make a second entry of a specific tract will receive due consideration. If any of the entrymen fail or refuse to take action within the time specified, his entry will be held for cancellation. Notify the parties in accordance with circular of October 28, 1886, (5 L. D. 204,) and in due time transmit the evidence of such notice with the report of your action to this office." Conforming to this notice, Calhoun, on the 17th of March, 1890, filed in the local office a formal relinquishment of "all that portion of land on the right bank of the North Canadian River known and designated as lot No. 10 (ten) in the N. W. quarter of section 3, township 11 N., range 3 west, Guthrie land district, the same having been embraced within my original entry No. 19, dated April 23, A.D. 1889."

On the 30th of October, 1890, all the contests above referred to were duly heard before the register and receiver of the local office, and it was decided that both the plaintiff and Echelberger were disqualified from taking the land because they had gone into the Territory before the time fixed by law, and that McCornack was entitled to enter the land. The claims of Bailey and Linthicum were rejected. From this decision the contests were carried to the Commissioner of the General Land Office, by whom the action of the local officers was affirmed, and thereupon an appeal was prosecuted to the Secretary of the Interior, with a like result. Subsequently, in 1894, on a petition for review by Calhoun and another of the parties, the Secretary of the Interior reiterated the previous ruling, affirming the action of the Commissioner of the General Land Office in rejecting the claims of Calhoun and others on the ground that they had been made in violation of law. Pending the appeals and decisions thereon as above stated, Calhoun filed with the Commissioner of the General Land Office an application complaining of the order which had compelled him to elect to which side of the river he would confine his entry, asserting that the action of the Department was illegal, as the stream was not a meandering one, and asking a revocation of the order.

The petition filed in the court below moreover contained an

averment that the rulings of the local land officers, of the Commissioner of the General Land Office and of the Secretary of the Interior, above stated, were null and void, because all these officers had misconceived the evidence and disregarded its weight, and was in violation of law, because the section of the act of 1889, forbidding going into the Territory before a named date of persons desirous of taking land therein, had no application to honorably discharged soldiers entitled as such to make a homestead entry. The land as to which it was averred the trust existed and a conveyance of which was sought was lot 10, as to which the relinquishment had been filed, under the circumstances above mentioned. It was charged that, despite the protest of Calhoun, a final certificate for this lot had been issued to the defendant, with full knowledge on his part of the claim of Calhoun, hence it was asserted the trust arose and the obligation to convey resulted.

The court below held that it was bound by the action of the Land Department in so far as that department had decided as a matter of fact that Calhoun had made entry of his land by going into the Territory contrary to the restrictions imposed by the act of Congress, and that in so far as the ruling of the Land Department rested upon a matter of law, it had been correctly decided that Calhoun, as a discharged soldier, was not entitled to go into the Territory contrary to law, and thereby acquire a priority over other citizens.

The first of these rulings was manifestly correct. It is elementary that, although this court will determine for itself the correctness of legal propositions upon which the Land Department of the government may have rested its decisions, it will not, in the absence of fraud, reëxamine a question of pure fact, but will consider itself bound by the facts as decided by the Land Department in the due course of regular proceedings, had in the lawful administration of the public lands. *United States* v. *Minor*, 114 U. S. 233 ; *Lee* v. *Johnson*, 116 U. S. 48 ; *Sanford* v. *Sanford*, 139 U. S. 647.

The fact that the plaintiff had entered the Territory prior to the time fixed by the statute and the proclamation of the President, having been conclusively determined, it follows in-

evitably, as a legal result, that an entry of land made under such circumstances was void and that the ruling by the Land Department so holding was correct. This leaves only open for our consideration the legal question whether Calhoun, because he was an honorably discharged soldier, was entitled to go into the Territory before the designated time and make a valid entry of a homestead therein. The claim that he was authorized to do so is based on a proviso contained in section 12 of the act of March 2, 1889, c. 412, § 13, 25 Stat. 980, 1005, which is as follows :

"And provided further, that the rights of honorably discharged Union soldiers and sailors in the late civil war as defined and described in sections 2304 and 2305 of the Revised Statutes shall not be abridged."

The sections of the Revised Statutes to which this proviso relates simply invest honorably discharged soldiers with the right to enter a homestead.

The proviso in question is immediately succeeded by the following :

"And provided further, that each entry shall be in square form as nearly as practicable, and no person be permitted to enter more than one quarter section thereof, but until said lands are open for settlement by proclamation of the President, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands or acquire any right thereto."

It is manifest from the context of the act that the proviso relied upon was intended only to give to honorably discharged soldiers and sailors an equal right with others to acquire a homestead within the territory described by the act, and the proviso was thus intended simply to exclude any implication that they were, in consequence of the prior provisions of the act, not entitled to avail themselves of its benefits. The proviso therefore in no way operated in favor of honorably discharged soldiers and sailors to relieve them from the general restriction as to going into the territory imposed upon all persons by the subsequent provisions of the law. To hold the

contrary would compel to the conclusion that the law, whilst allowing honorably discharged soldiers and sailors to take advantage of its provisions, had at the same time conferred upon them the power to violate its inhibitions.   The purpose of Congress in allowing those named in the proviso to reap the benefits of the law was not to confer the power to do the very thing which the act in the most express terms sedulously sought to prevent.

*Affirmed.*