### THOMAS W. POTTER v. MARY HALL.

(Filed July 6, 1901.)

1. ENTRY ON HOMESTEAD LANDS—Invalid, When. This is a contest for the ownership of a homestead. The plaintiff was under the employment of the Indian agent upon the Cheyenne reservation, at the time referred to. He was directed by the Indian agent, on the morning of the opening, to "proceed to the east line of the Cheyenne and Arapahoe reservation, to preserve order and prevent any settlement on the same." At twelve o'clock on that day, the lands were opened to settlement, and within a minute or a minute and a half thereafter the plaintiff was upon the land in dispute, asserting his claim to it as a homestead. During that morning he crossed the east line of the Indian reservation and entered upon the lands about to be opened for settlement, and upon the tract of land here in question, for the purpose of removing some persons who were camping there. This entry was a violation of the acts of congress of March 1 and 2, 1889, which provide, with reference to the opening of these lands for settlement, that: "Any person who may enter upon any part of the lands prior to the time that the same are opened to settlement by the act of congress shall not be permitted to occupy or make entry of such lands, or any part thereof," and that "until such lands are opened to settlement by proclamation of the president, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands or acquire any right thereto." The act of the plaintiff in entering upon the quarter section of land in controversy is a violation of these acts of congress, and disqualifies him from acquiring title to the land in dispute.

2. CITIZENSHIP—What Constitutes. The husband of the defendant made the homestead entry upon the land and was, at the time, a citizen of the United States. He subsequently died, leaving the defendant his widow. Under the Revised Statutes of the United States, section 1994, second section of the act of congress of February 10, 1855, declaring that "any woman who might lawfully be naturalized under the homestead laws, married, or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen." The defendant is entitled to the privileges of citizenship, and to the acquisition of land under the homestead laws of the United States.

3. JUDGMENT—When Final—Demurrer. At the trial below, upon the overruling of the demurrer of the plaintiff to the answer and cross petition of the defendant, the plaintiff elected to stand upon his demurrer, and the trial court thereupon rendered final judgment in the case. Held, That this is the correct proceeding. When a demurrer is overruled, and the defendant elects to stand upon and abide by his demurrer, the submission of the case is a final submission and the judgment thereupon is final.

4. COURTS WILL NOT RECOGNIZE POINTS OF TRIVIAL MOMENT. It is objected to the rendition of the judgment in behalf of the defendant, that it was made to appear by a copy of the final receipt from the land office, which the plaintiff had attached to his amended petition, that he had paid out the sum of $3.50, that balance of payment required by law for the entry of the land as a homestead, and he now contends that he should have judgment here because the answer and cross petition failed to aver a tender into court of this amount. We cannot sustain this contention. The court is constituted for the purpose of administering justice in matters of grave interest to the parties, and not upon points of trivial moment, tending to promote contentious litigation. The maxim applies that "de minimis non curat lex."

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before*

*C. F. Irwin, Trial Judge.*

*J. H. Everest,* for plaintiff in error.

*F. E. Gillett* and *M. D. Libby,* for defendant in error.

### STATEMENT OF FACTS.

This was an action under chap. 66, art. 24 of the Statutes of 1893, for the recovery of real property, lots 3 and 4 and

south half of N. W. quarter of section 4, twp. 12, N. of R. 7 West I. M., in Canadian county, under the homestead laws of the United States.

The action was tried upon an amended answer and cross petition. The defendant alleged that she was the widow of Gilman C. Hall, a native born citizen of the United States, in all respects a qualified entryman, and entitled to receive final patent therefor, from the time of his settlement to the date of his death sometime after he made homestead entry therefor, and that the defendant, as his wife, was a settler with him upon the tract of land and had continued to occupy the same during the lifetime and after the death of the said Hall, and that while the said Hall was a homestead settler, holding the tract of land thereunder, Potter filed a contest against him, alleging priority of his right, and that hearings were had, findings of fact made and decisions rendered by the register of the local land office, by the commissioner of the general land office, by the secretary of the interior, and afterward and finally upon review, by the acting secretary of the interior, in the absence of the secretary; that in all these hearings, the findings of fact and the respective judgments of these officers had been uniformly in favor of the right asserted by the homestead entry of the defendant, except that finally and upon the motion for review before the acting secretary of the interior, he, upon a consideration of the same facts found by the register and receiver of the local land office, by the commissioner of the general land office and of the secretary of the interior, reversed the decision of the secretary and awarded the land to the plaintiff, Potter. Copies of the findings of fact of the register and receiver are annexed to the answer and cross petition of the defendant thereto with proper averments, the de-

fendant declaring that findings of fact and conclusions of law made by the register and receiver, the commissioner of the general land office and the secretary of the interior, were correct and that the order made by the acting secretary of the interior subsequently, by which she was deprived of her entry and patent to the land, which was by the acting secretary awarded to the plaintiff, Potter, was contrary to law, and that the equities had been with the entryman, Gilman C. Hall, and were now with his widow, the defendant.

The prayer was for a decree declaring a trust in the plaintiff for the benefit of the defendant, Hall, and directing the execution of a deed accordingly.

The plaintiff demurred to this amended answer and the affirmative averments of the cross petition. The demurrer was overruled by the court below, and the plaintiff elected to stand upon his demurrer and final judgment was entered in the case in favor of the defendant. The case is brought here by the plaintiff, Potter, who seeks a reversal of this judgment.

Opinion of the the court by

McAtee, J.: The findings of fact material to a determination of the case were practically identical as made by the register and receiver of the local land office, by the secretary of the interior and by the acting secretary of the interior, upon review of the case.

They were that Potter had made settlement upon the tract of land upon the 22nd day of April, 1889, and had established residence and maintained the same as required by the homestead laws. That Hall, who had the homestead entry,

established residence upon the land with his family in October, 1889, and has maintained that residence up to the time of the trial in the land office.   It was found that for some years previous to the opening of Oklahoma to settlement, he had been in the employment of the agent in charge of the Cheyenne and Arapahoe Indian agency, which adjoins the Oklahoma lands on the west. . On the morning of April 22, 1889, he was directed by the agent to take charge of a squad of Indian policemen and proceed to the east line of the reservation for the purpose of preserving order and preventing any settlement thereupon.   In pursuance of this order he went to the vicinity of the land in question on the forenoon of April 22, 1889, and during the morning went across the line, and upon the tract of land in question and ordered off some persons who were camping thereupon. At 12 o'clock, the hour at which the lands were opened for settlement, he again left the land and line of the Indian reservation and immediately thereafter, within a minute or a minute and a half, made settlement upon the land in question.

The act of congress which provided for the opening of these lands, enacted March 1, 1889, and found in sec. 2, chap. 317, 25 Statutes at Large, provides that:

"Any person who may enter upon any part of said lands in said agreement mentioned, prior to the time that the same are opened to settlement by act of congress, shall not be permitted to occupy or make entry of such lands or any part thereof."

And the act of congress of the next day, March 2, 1889, 25 Statutes at Large, chap. 412, provide, with reference to the same lands, that:

"Until such lands are opened to settlement by proclamation of the president, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands or acquire any right thereto."

It is upon these undisputed statements of fact and upon this condition of the law, that the acting secretary of the interior came to the conclusion that since he, Potter, "had been employed at the Cheyenne and Arapahoe agency near by for six years before the opening of the country to settlement, he had lived in close proximity to the land in dispute, he had nothing to gain or to learn, therefore, by the short excursion with which he is charged, and which it cannot be denied was made in the performance of duty devolved upon him by the orders of the agent, who appointed him to the command of the police at that point, he neither gained nor sought advantage, and it was error to hold that under the circumstances of entry into the territory, he was disqualified thereby."

The explicit terms of the federal statute, with its clear and peremptory prohibition, do not leave this question open to be determined by inferences, Potter was appointed on the Indian force on the morning of the opening of the land for settlement, April 22, 1889, and was directed by the Indian agent to "proceed to the east line of the Cheyenne and Arapahoe reservation to preserve order and prevent any settlement on the same." When he crossed the east line of the Indian reservation and entered upon the lands which were about to be opened for settlement upon the same day, and entered upon the tract of land which he afterward and on the same day undertook to

occupy as a homestead, it was not in· pursuance of the duty thus deputed to him by the Indian agent. He was acting in excess of it. The Indian agent had no authority to authorize him to cross the line of the Indian reservation, and did not authorize him to do so. When he crossed that line and entered upon the land in dispute here, he placed himself expressly under the prohibition of the statute against "entering upon any part of said lands," and under the penalty which provides that such person "shall not be permitted to occupy or make entry of such lands or any part thereof" or "acquire any right thereto."

And this violation of the federal statute cannot be reasoned away by the suggestion made by the acting secretary of the interior, that "he had been employed at the Cheyenne and Arapahoe agency for six years before the opening of the country to settlement, had lived in close proximity to the land in dispute, and had nothing to gain or to learn," and that when he made "the short excursion with which he is charged, and which cannot be denied was made in performance of duty devolved upon him by the orders of the agent who appointed him to the command of the police at that point, he neither gained or sought advantage," and that it was "error to hold that, under the circumstances of the entry into the territory, he was disqualified thereby."

It was held in *Smith v. Townsend,* 148 U. S. 490, upon the statutes governing this matter, that:

"The general language used in these sections indicates that it was the intent to make the disqualifications universally absolute. It does not say 'any person who may wrongfully enter', etc., but 'any person who may enter,' 'rightfully or

wrongfully,' is implied. There are special reasons why it must be believed that congress intended no relaxation of these disqualifications on the part of those on the company's right of way, for it is obvious that when a railroad runs through unoccupied territòry like Oklahoma, which on a given day is opened for settlement, numbers of settlers will immediately get into it, and large cities will shortly grow up along the line of the road; and it cannot be believed that congress intended that they who were on this right of way, in the employ of the railroad company should have a special advantage of selecting tracts just outside that right of way, and which would doubtless soon become the sites of towns and cities."

This determination of the supreme court upon the statutes in this question has been affirmed in *Payne v. Robinson*, 169 U. S. 323, and *Calhoun v. Violet*, 173 U. S. 60.

We therefore conclude that the acting secretary of the interior misapplied the law, and that it was properly and correctly interpreted in the opinion of the register and receiver of the United States land office at Oklahoma City, to the effect that "his orders were to prevent settlement upon the Oklahoma lands. When he crossed the land upon this tract before the legal hour, he became a trespasser, the same as any other person not clothed with authority."

We feel the less hesitation in reversing the conclusion of the last tribunal of the land department "on review" not only because the conclusion we now arrive at is that which must necessarily be arrived at upon the facts, but also because it was the one accepted by the secretary of the interior, as well as the commissioner of the general land office.

It is however, argued that the answer and cross petition of the defendant in error, Mary Hall, fail to show that she is

entitled to relief, since they did not allege that she is either a native born or a naturalized citizen of the United States, and that therefore the averments of her pleading fail to show that she is qualified to make final proof.

This objection fails to take into view the express provision of section 2 of the act of congress of February 10, 1855, which declares that:

"Any woman who might lawfully be naturalized under the existing laws married, or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen." (Revised Statutes of the United States, section 1994.)

And it is held in *Kelly v. Owen,* 7 Wall. (U. S.) 496, that this act of congress confers the privilege of citizenship upon women married to citizens of the United States, and that under it, the citizenship of the husband, whenever it exists, confers citizenship upon the wife.

It is also contended that the answer and cross petition in failing to show that Gilman C. Hall and his wife lived upon said land for five years or more, is insufficient.

It was not necessary for Gilman C. Hall to have lived on the land for five years. It is shown, however, that he resided upon the land from October, 1889, and that he resided thereon up to the time of his death, and that his wife, the defendant herein, has resided thereon continuously up to the present time, and has made valuable improvements thereupon. This is a sufficient averment of residence upon the circumstances of this case. If it should be held otherwise, then, if a husband should die before the lapse of the period necessary to perfect and complete his residence, the statute authorizing his widow to acquire title by virtue of his citi-

zenship and her own, would be rendered void, which was certainly not the purpose of congress.

It is also contended that when the trial court overruled the demurrer of the plaintiff and the plaintiff elected to stand upon his demurrer, and the trial court thereupon rendered final ·judgment in the case, that this rendition of final judgment was reversible error. We cannot sustain this view.

It was held in *McNasser v. Sherry*, 1 Colo. 12, and in *Bates v. Williams*, 43 Ill. 494, that if the defendant does not plead on overruling demurrer to a declaration, default judgment should be entered. And it is generally held that when a demurrer is overruled and the demurrant does not plead over or answer, but stands upon and abides by his demurrer, the submission of the case upon the demurrer is a final submission and the judgment thereupon is final. (6th Ency. of Pl. & Pr. p. 366, and cases there cited.)

.The plaintiff attached to his amended petition a copy of the final receipt or certificate issued to him for the land. It showed that, after the litigation in the land department was over, namely, on the 8th day of December, 1897, he had paid out the sum of $3.56, the balance of payment required by law for the entry of the land as a homestead under section 2291 of the Revised Statutes of the United States, and he now contends that he should have judgment here, because the answer and cross petition wholly fails to allege that the defendant in error offered to pay or tender into court this amount of land office fees for the final proof paid by Potter.

The subject of the contention was 140 acres of valuable land. The controversy in the land department was carried on

through a period of 7 or 8 years. It is now renewed in the courts, and is recognized by both parties as of much importance. Even if the case was one which required the tender of these fees by the defendant in her cross petition, she would not be denied her equity, because of the omission to tender so trivial a sum. The court, by its final decree, can require the repayment of the sum mentioned, but it would be unworthy the dignity of this court, in so serious a litigation, while sitting in equity and endeavoring to administer justice in matters of grave interest to the parties, to hold that this homestead should now be turned over to the plaintiff, who is not entitled to it under the Statutes of the United States, because the defendant failed to make an express tender of a sum so trivial. To make such a ruling would be, not to administer equity, but to use the power and jurisdiction of the court to do injustice, and to promote contentious and vexatious litigation, upon points of trivial interest and consequence.

The judgment of the trial court will be affirmed.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.