# LeCLAIR v. HAWLEY ET AL.

## (No. 578:)

Time—Computation—Mines and Minerals—Location of Claims on Ceded Lands of Indian Reservation—Appeal and Error—Review of Order Bringing in New Party—Error not Prejudicial.

1. Where the date of the expiration of a prescribed period from or after the time of an act or event is to be determined, the general rule that the *terminus a quo* is to be excluded is not so arbitrary or unqualified as to bar an inquiry to ascertain the reason of the provision to be construed, or what was intended thereby, as disclosed by the instrument or statute under consideration, but the rule must yield where a contrary intention is clearly disclosed.

2. By the Act of Congress and proclamation of the President, August 15, 1906, was fixed as the date of opening to settlement, entry or location under the homestead, townsite, coal and mineral land laws certain ceded lands in the Shoshone Indian Reservation, and "during the first sixty days following the opening," including the date aforesaid, homestead entries were permitted to be made by applicants duly registered under the provisions of the proclamation, in the order therein specified, and at the rate of a stated number each day, Sundays excluded, until and including October 13, 1906, that date being mentioned in the proclamation as the expiration of the sixty day period. It was further provided that no person shall be permitted to settle upon, occupy, or enter said lands except as prescribed in the proclamation "until after the expiration of sixty days from the time when the same are opened to settlement and entry," and, by the proclamation, it was declared that "after the expiration of said period of sixty days, but not before, as herein prescribed, any of the said lands remaining undisposed of may be settled upon, occupied, entered or located under the general provisions of the homestead, townsite, coal and mineral land laws." *Held*, that in computing the sixty day period the first day of the opening was to be included, that such period therefore expired at midnight of October 13, 1906, and that certain mining locations made on October 14, 1906, were not prematurely made, but were made at a time authorized by law.

3. In the act of Congress of March 3, 1905, for the disposal under specified land laws of certain ceded lands in the Shoshone Indian Reservation, which provides that "no person shall be permitted to settle upon, occupy, and enter said lands" except as prescribed in the proclamation of the President, until after sixty days from the time when the same are opened to settlement, the words "settle upon, occupy, and enter," were used in their technical sense as acts incident to the appropriation of the lands, and as initiating a right to claim or acquire title under the land laws, and did not have the effect of prohibiting the mere presence of a person upon the land, and, therefore, mining locations made after the expiration of the sixty day period were not invalidated by the fact that the parties making them had entered upon the lands so located, or other lands in close proximity thereto, before the expiration of such period, and remained there until they had made their locations.

4. Where it appears only by the journal entries that upon the motion of one not originally a party to the case it was ordered that his name be entered as a party defendant "in accordance with the evidence proven on the trial," and that the plaintiff excepted thereto, the bill of exceptions not referring to the motion, the ruling thereon, or the exception; *Held,* that the proceedings by which the one referred to was made a defendant was not properly before the court for consideration on error.

5. Where the possession of mining ground in controversy was properly awarded by the judgment to some of the defendants as owners of a particular claim, the error, if any, in also adjudging "as against the plaintiff" the right of possession in other defendants under a different location held not prejudicial to plaintiff.

[Decided July 8, 1909.]                    (102 Pac. 853.)

Error to the District Court, Fremont County, Hon. Charles E. Carpenter, Judge.

Action for possession of mining ground brought by Edmore LeClair against J. B. Hawley, Neal C. Hawley, Robert McGowan, O. J. Midthun, Harry P. Minor, and S. E. Mensinger. Before judgment A. M. Lawton was made a party defendant by order of court. Judgment for defendants. Plaintiff prosecuted proceeding in error. The facts are stated in the opinion.

*Stone, Winslow & Gudmundsen,* for plaintiff in error.

Where it is provided that an act can be done after so many days from an act or event, in computing the time the *terminus a quo* is to be excluded. (8 Ency. L. (2nd Ed.) 221; McDonough v. Gravier, 9 La. 531; Stewart v. Meyer, 54 Md. 454; Butts v. Edwards, 2 Denio, 164; Bank v. Ives, 2 Hill 355; Marvin v. Marvin, 75 N. Y. 240; Burgess v. Burgess, 117 N. C. 447; Pisar v. State, 56 Neb. 455; Halbert v. Land Ass'n, 89 Tex. 230; State v. Brown, 22 Minn. 482; Bigelow v. Willson, 18 Mass. 485; Judd v. Fulton, 10 Barb. 117; Blunt v. Heslop, 8 A. & El. 577; Vorwerk v. Nolte, 24 Pac. 840; Simms v. Hampton, 1 S. & R. 411; Watson v. Pears, 2 Camp. 294; Page v. Weymouth, 47 Me. 238; Pearpoint v. Graham, 19 Fed. Cas. 60; Lysle v. Williams, 15 S. & R. 135.) Under the well established rule, therefore, for the computation of time, no mining location could be made on the lands in dispute prior to October 15, 1906, the sixty day period from the day of opening the lands not having expired until midnight of October 14, 1906.

Under the act of Congress and proclamation opening these lands to settlement and entry, the defendants were prohibited from going upon any of the lands until after the expiration of sixty days from the date of the opening (Aug. 15, 1906), and it appearing that they were upon the lands prior to the expiration of said period, they were trespassers and were not qualified to make any entry immediately after the expiration of the period, their trespass having continued until that time. (Smith v. Townsend, 148 U. S. 490; Payne v. Robertson, 169 U. S. 323; Calhoun v. Violet, 173 U. S. 60; Potter v. Hale (Okla.), 65 Pac. 841.) A mining location must be good when made, and the maxim "first in time, stronger in right" cannot be applied so as to protect a person who settles upon lands reserved by the policy of the law as against one entering lawfully and not included in the reservation. (Phillips v. Brill (Wyo.), 95 Pac. 856, 27 Cyc. 560.) Neither the Act of Congress nor the proclamation per-

mitted any one to go upon any part of the mineral lands
to prospect or survey during the sixty day period and
remain there awaiting the expiration of such period. To
have permitted that would have been a serious discrimina-
tion against all citizens who had theretofore exhausted
their homestead right, since they, not being able to pro-
cure a certificate permitting them to go upon the lands,
were excluded until the expiration of the period afore-
said. Congress did not intend such permission to a per-
son entitled to an agricultural filing to work a hardship
against any other citizen, or to permit a person to have
a special privilege at the expense of others.

It is further contended that the court erred in permit-
ting A. M. Lawton to be entered of record as a defend-
ant. He had not been made a party defendant, had made
no appearance and was not represented on the trial of the
cause. Neither is there any pleading in the record signed
by him or on his behalf. Further, there is no evidence
to establish the authority of H. P. Minor to act as agent
for Lawton in locating the Squawman lode.

*E. H. Fourt,* for defendants in error.

The act of Congress opening the ceded lands to entry
gave no power to the President to delay the opening or
to exclude persons from the ground. He had authority
to direct the manner in which entry could be made. The
defendants were not trespassers, because they had the
right to be upon the reservation, and the proclamation itself
stated clearly that the sixty day period expired October
13, 1906. The rule of computation contended for by
plaintiff in error, viz.: that the day of the opening should
be excluded, cannot apply in this case because the Act
of Congress and the proclamation say that the sixty day
period would expire October 13, 1906. (Rev. Stat. 1899,
Sec. 3423; Arnold v. U. S., 9 Cranch 104; Loan Co. v.
Channell (Minn.), 55 N. W. 121.) The cases from Okla-
homa are not in point, for the reason that it was provided
in the act opening the lands in that Territory to settle-

ment that no person should be permitted to enter upon and occupy the same until they were open to settlement by proclamation, and that no person violating such provision should ever be permitted to acquire a right to any of the lands. (25 U. S. Stat. at Large, 1005.) There is no such penalty in the act here under consideration. The locations of defendants having been made after the expiration of the sixty day period, they were good even though the defendants had originally been trespassers. (Noonan v. Mining Co., 121 U. S. 393; Kendall v. Mining Co., 144 U. S. 658; Collins v. Bubb, 73 Fed. 735; U. S. v. Payne, 8 Fed. 883; McFadden v. M. Co., 87 Fed. 154.)

The location notices of plaintiff in error were void as not complying with the statutory provisions with reference thereto, and the evidence does not show that sufficient discovery had been made upon his claims to sustain them. His original certificates of location were also void. It is undisputed that the defendants were in possession of the mining claims in question at the time the plaintiff attempted to make his locations, and therefore his clandestine locations made within the boundary lines of the locations of defendants were void. (Phillips v. Brill, 95 Pac. 856; Oil Co. v. Oil Co., 98 Fed. 673; Miller v. Chrisman, 73 Pac. 1083; Atherton v. Fowler, 96 U. S. 573.) Since the original locations claimed by the plaintiff were not completed as by law required, he obtained no right to the possession of the property, and he could only recover upon the strength of his own title.

Potter, Chief Justice.

This is a suit brought by the plaintiff in error in the District Court in Fremont County to recover possession of certain mining ground, and for an injunction to restrain the defendants from further interfering with the premises, and from filing or recording any instruments of writing affecting the title to the same. The petition also asks for damages and that the plaintiff's title to the lands in controversy be quieted in him as against any claim as-

serted by the defendants or either of them. The several tracts of land in controversy are claimed by the plaintiff and defendants under conflicting mining locations, and are situated in the district or territory which, as a part of the Shoshone Indian Reservation, was ceded to the United States by an agreement with the Indians, ratified and amended by an Act of Congress approved March 3, 1905. The petition contains four causes of action, each alleging the location of a mining claim by the plaintiff on October 15, 1906, and that on October 24, 1906, the defendants seized possession of the premises included in said claim, and then and since excluded the plaintiff therefrom. The defendants by their answer alleged the location of their several mining claims on October 14, 1906, with the exception of one claim, which is alleged to have been located on October 15, 1906. The case was tried to the court without a jury, and judgment was rendered for the defendants. It was found and adjudged that the several defendants were the owners and entitled to possession of the claims which had been located by them, the temporary restraining order that had been issued was dissolved, and the defendants were awarded their costs. The plaintiff filed a motion for new trial, which was overruled, and he brings the cause to this court on error.

The evidence sustains the allegations of the pleadings as to date of location of each of the mining claims involved, and it is conceded in the brief of counsel for plaintiff in error that the location by the defendants of their several claims was prior in point of time to plaintiff's locations, and also that the lands in controversy are mineral lands, with well defined ledges of rock in place carrying minerals exposed on all the claims, and that the defendants made their discoveries, staked their claims, posted the notices, and performed all the necessary acts up to the time of the commencement of the suit. But it is contended that the defendants made their discoveries and located their claims in violation of the Act of Congress and the proclamation of the President opening the ceded

lands to settlement, entry, and location, and, for that rea-
son, that the several locations of the defendants were
and are void.  As to all but one of the claims located by
the defendants, it is contended that, when they were lo-
cated, viz.:  October 14, 1906, the lands were not subject
to location under the mineral land laws of the United
States; and, further, that the defendants were not en-
titled to make any of their locations for the reason that
they had unlawfully entered upon and occupied the lands
included in one or more of their claims before the same
were subject to location as mineral lands.

In the Act of Congress aforesaid ratifying and amend-
ing the agreement with the Indians by which that part
of the reservation embracing the lands in controversy was
ceded and relinquished to the United States, it is stated
that the United States stipulates and agrees to dispose
of the ceded lands, as therein provided, under the provis-
ions of the homestead, townsite, coal and mineral land
laws, or by sale for cash; and in section 2 of the act it
is provided as follows:

"That the lands ceded to the United States under the
said agreement shall be disposed of under the provisions
of the homestead, townsite, coal and mineral land laws
of the United States and shall be opened to settlement
and entry by proclamation of the President of the United
States on June fifteenth, nineteen hundred and six, which
proclamation shall prescribe the manner in which these
lands may be settled upon, occupied and entered by per-
sons entitled to make entry thereof, and no person shall
be permitted to settle upon, occupy, and enter said lands
except as prescribed in said proclamation until after the
expiration of sixty days from the time when the same
are opened to settlement and entry," * * *  (33 U. S.
Stat. at Large, 1016-1022.)

By public resolution of Congress approved March 28,
1906, the time for the opening of the ceded lands to
public entry was extended to August 15, 1906, unless the
President should determine upon an earlier date for said

opening. The proclamation of the President was dated June 2, 1906, and declared that on and after the fifteenth day of August, nineteen hundred and six, in the manner prescribed in the proclamation, and not otherwise, the ceded lands would be opened to settlement, entry and disposition under the general provisions of the homestead, townsite, coal and mineral land laws of the United States. The proclamation then proceeded to provide for a registration of persons qualified and desiring to enter, settle upon, or acquire title to any of said ceded lands under the homestead laws, to be followed by a public drawing commencing August 4, 1906, and continuing for the necessary period to complete the same, to determine the order in which "during the first sixty days following the opening" the registered applicants would be permitted to make homestead entry of the lands; and it was declared that applications for homestead entry "during the first sixty days following the opening" could be made only by registered applicants and in the order established by the drawing. Succeeding the statement of these preliminary regulations, provision was made for entries by the registered applicants as follows:

"Commencing August fifteenth, nineteen hundred and six, at nine o'clock a. m., the applications of those persons drawing numbers 1 to 100, inclusive, entitling them to make homestead entries, must be presented at the land office at Lander, Wyoming, in the land district in which the said lands are situated and will be considered in their numerical order during the first day, and the applications of those drawing numbers 101 to 200, inclusive, entitling them to make homestead entries, must be presented and will be considered in their numerical order during the second day, and so on, Sundays excluded, at the rate of 100 such applications per day until and including August twenty-fifth, nineteen hundred and six; on August twenty-seventh, nineteen hundred and six, such applications will be considered in like manner at the rate of 120 per day, Sundays excluded, until and including September sixth, nine-

teen hundred and six; on and after September seventh, nineteen hundred and six, such applications will be considered at the rate of 140 per day, Sundays excluded, until and including September eighteenth; nineteen hundred and six; on and after September nineteenth, nineteen hundred and six, such applications will be considered at the rate of 160 per day, Sundays excluded, until and including September twenty-ninth, nineteen hundred and six; and on and after October one, nineteen hundred and six, such applications will be considered at the rate of 170 per day, Sundays excluded, until and including October thirteenth, nineteen hundred and six, the expiration of the sixty day period." * * *

Having thus authorized the making of homestead entries by registered applicants and prescribed the time when such entries would be permitted, other entries or locations were provided for in a paragraph near the close of the proclamation, as follows:

"All persons are especially admonished that under said Act of Congress approved March three, nineteen hundred and five, it is provided that no person shall be permitted to settle upon, occupy or enter any of said lands except in the manner prescribed in this proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry. After the expiration of said period of sixty days, but not before, as herein prescribed, any of said lands remaining undisposed of may be settled upon, occupied, entered, or located under the general provisions of the homestead, townsite, coal and mineral land laws of the United States in like manner as if the manner affecting such settlement, occupancy, entry, and location had not been prescribed herein in obedience to law." (34 U. S. Stat. 3208-3212.)

Whether the lands were subject to mineral location at the time the locations of defendants were made depends upon the construction to be given to the provisions of the proclamation in connection with that part of Section 2 of the Act of Congress aforesaid, which declares that no

person shall be permitted to settle upon, occupy, and enter said lands except as prescribed in said proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry.

The principal point to be decided in this connection is whether October 14, 1906, the day upon which all but one of the locations of the defendants were made, was after the expiration of sixty days from the time of the opening of the ceded lands to settlement and entry. If, in computing the sixty day period, the day of the opening, viz.: August 15, 1906, be counted as one of the sixty days, then the period expired at midnight of October 13, 1906, and the locations of defendants would not then be objectionable as premature. But it is contended on behalf of the plaintiff in error that the day of the opening should be excluded in such computation, thereby bringing October 14th within the sixty day period, and requiring that the locations made on that day be adjudged ineffective and void.

The general rule that the *terminus a quo* is to be excluded may be conceded, but the rule is not so arbitrary or unqualified as to bar an inquiry to ascertain the reason of the provision to be construed, or what was intended thereby, as disclosed by the instrument or statute under consideration. The rule must yield, we think, where a contrary intention is clearly disclosed, and this seems to be the view taken by the Supreme Court of the United States, the ultimate authority upon the construction of a Federal statute.

In Taylor v. Brown, 147 U. S. 640, the court had under consideration a statute providing that the title to lands acquired under a homestead entry by an Indian who had abandoned his tribal relations should remain inalienable for the period of five years from the date of the patent issued therefor. A patent had been issued to such an Indian on June 15, 1880, and a deed conveying the premises was executed by him on June 15, 1885. It was held that since, in the absence of the provision restraining aliena-

tion, the premises might have been conveyed on the day of the issuance of the patent as well as afterwards, such date should. be included as a part of the five year period, for otherwise the prohibition against alienation would have been extended beyond five years. The court was of the opinion that Congress did not intend to prescribe a longer period than five years in prohibiting alienation, and it was said:· "While it is desirable that there should be a fixed and certain rule upon this subject, it must be conceded that the rule which excludes the *terminus a quo* is not abso-. lute, but that it may be included when necessary to give effect to the obvious intention." And again: "Possibly the language is susceptible of being construed to mean that the land should be inalienable on the day of the issue of the patent and for five years after that date, two periods of time, but we are of the opinion that the more natural and the true construction is that only one period is referred to, and that the day of the patent should not be excluded."

The opinion in that case cited and quoted from the case of Griffith v. Bogert, 18 How. 158, in which a law of Missouri was construed which allowed the lands of a deceased debtor to be sold under execution, but prohibited it from being done until after the expiration of eighteen months from the date of the letters of administration upon his estate. Letters of administration had been dated November 1, 1819, and the sale in question occurred May 1, 1821. It was held that the *terminus a quo* should be included and that the sale was valid._ As a reason for holding the day of the date of the letters to be included in computing the time during which a sale was prohibited, the court said: "The object of the Legislature was to give a stay of execution for eighteen months, in order that the administrator might have an opportunity of collecting the assets of the deceased and applying them to the discharge of his debts. The day on which the letters issued may be used for this purpose as effectually as any other in the year. The rights of the creditor to execu-

tion are restrained by the act for the benefit of the debtor's estate. The administrator has had the number of days allowed to him by the statute to collect the assets and pay the debts."

The statute under consideration designates a period of sixty days to occur and expire before any of the lands could be lawfully settled upon, occupied, and entered; "except as prescribed in said proclamation," and the *terminus a quo,* or the commencement of said period, is stated to be "the time when the same are opened to settlement and entry." In the same section of the statute it was provided that the proclamation of the President should prescribe the manner in which the ceded lands should be settled upon, occupied, or entered by persons entitled to make entry thereof. It is clear, we think, from these provisions, that it was understood and intended by Congress in enacting the statute, that the proclamation would permit the making of a preferred class of entries during the designated period of sixty days, and that, having in mind the then recent history of the opening to settlement and entry of lands in other reservations, it was also understood and intended that the proclamation would provide a plan whereby such preferred class of entries might be made within the limited period with as little friction as possible. The object, therefore, of the provision prohibiting any other settlement or entry during such period other than as provided in the proclamation appears to have been to render more effective any scheme adopted and promulgated by the President for the making of those entries by the persons given a preferred right. But we perceive no reason for assuming or holding that Congress intended to set apart at any time after the opening a day upon which no locations of any character could be made, or to postpone the time for permitting any other than the preferred entries beyond the sixty days allowed for the making thereof. The lands were to be opened, as declared by Congress, on August 15, 1906, unless the President should determine upon an earlier date. An earlier date was not determined

upon, but the date fixed by Congress was also fixed in
the proclamation as the date of the opening. Having
provided a method whereby persons entitled to make a
homestead entry of these lands might secure a preferred
right, the proclamation provided that a certain number of
such persons should make their respective entries on the
first day of the opening, commencing at 9 o'clock in the
morning, which we may assume was understood to be the
regular hour for the opening of the land office to public
business. If we are correct in our theory of the purpose
Congress had in view in prescribing the period of sixty
days, and we see no reason to doubt its correctness, it
appears that the day of the opening was by the proclama-
tion of the President devoted to that purpose, that is to
say, the day was designated as one of the days upon which
the preferred class of entries might be made, so that if
the day on which the lands were opened be excluded and
October 14th be included, instead of sixty days, there
would be sixty-one days for the making of preferred
entries before any others would be allowed, or the result
would be that October 14th was separated from the other
days following the opening as a day upon which no entries
or no locations of any kind could be lawfully made, which
result, as above indicated, was not, in our opinion, intended.

That the President understood that the day of the open-
ing constituted and was to be counted as one of the sixty
days is clear, for it is expressly stated in the proclamation
that October 13, 1906, would be the expiration of the sixty
day period. The proclamation provided for the making
of homestead entries by only registered applicants during
the first sixty days following the opening, and it is apparent
that the day of the opening was considered by the Presi-
dent as one of such sixty days, for October 13, 1906, was
fixed as the last day upon which such entries were per-
mitted to be made. The proclamation, we think, thoroughly
agrees with and supports the theory we have stated as
to the object of setting apart the sixty day period. Upon
the face of the proclamation there can be no question but

that the first day, viz.: August 15, 1906, was regarded and computed as one of the sixty days prescribed in the Act of Congress. A similar proclamation was so construed by the Commissioner of the General Land Office, with the approval of the Secretary of the Interior.

. An Act of Congress approved on the same day that the act here under consideration was approved, restored to the public domain for entry under the homestead and townsite laws the unallotted lands in the Uintah Indian Reservation in the State of Utah, and provided that the time for the opening of the said lands to settlement and entry, and the manner in which they might be settled upon, occupied and entered, should be prescribed by proclamation of the President. It was also provided in that act, as in the act before us, that no person should be permitted to settle upon, occupy or enter any of said lands "except as prescribed in said proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry." The proclamation of the President, which was dated July 14, 1905, provided a plan similar in character to that found in the proclamation here, and that on August 28, 1905, at 9 o'clock a. m., the applications of those drawing numbers 1 to 50, inclusive, must be presented at the land office. That proclamation also contained a paragraph calling attention to the provision of the Act of Congress prohibiting any person from settling upon, occupying, or entering any of said lands, except in the manner prescribed in the proclamation, until after the expiration of the sixty days aforesaid, and provided that after the expiration of said period of sixty days, but not before, any of said lands remaining undisposed of might be settled upon, &c.

A letter of instructions to the register and receiver of the land office at which said applications for entry under said act were to be presented, dated October 16, 1905, signed by the Commissioner and approved by the Secretary of the Interior, referred to the provisions of the Act of Congress and the proclamation of the President, and

quoted especially the following provision of. the. proclamation, viz.: ."After the expiration of said period of .sixty days, but not before, as hereinbefore prescribed,. any. of said lands remaining undisposed of may be settled upon, occupied, and entered under the general provisions of the homestead and townsite laws of the United States in like manner," &c. Following the quotation of that provision, the letter proceeded to state: "According to said proclamation, this period of sixty days began on August 28, 1905, and, as a consequence, will expire at midnight of October 26, 1905. Thereafter all unreserved non-mineral lands which have not been entered on the plan provided for in said proclamation, may be settled upon, occupied and entered under the general provisions of the homestead and townsite laws of the United States." The letter further stated that the lands would become subject to general settlement under the laws mentioned immediately after midnight of the 26th of the month. We refer to the proclamation as published in Volume 34, Decisions of the Department of the Interior Relating to Public Lands, 1-5, and to the letter of instructions as published in the same volume, commencing at page 176.

Congress, in our opinion, intended by the provision under consideration to allow sixty days during which the lands should not be entered or disposed of in any other manner than that prescribed by the President in his proclamation, and that at the expiration of the sixty days allowed for that purpose, the lands would be subject generally to settlement, entry and disposition under the laws specified in the act. The day of the opening, viz.: August 15, 1906, having been prescribed in the proclamation as one of the days upon which homestead entries by the preferred applicants should be made, there is no reason for excluding .it in computing the sixty day period, but, on the contrary, it is necessary to be included to give effect to the evident purpose of Congress. By including that day, the sixty day period expired at midnight of October 13, 1906, and, there-

fore, the locations of the defendants were not prematurely made, but were made at a time authorized by law.

The declaration in the proclamation that the lands remaining undisposed of may be settled upon, occupied, entered, or located under the general provisions of the homestead, townsite, coal and mineral land laws of the United States "after the expiration of said period of sixty days, * * * as herein prescribed," would seem to have permitted settlement, entry or location on October fourteenth, since, in a preceding paragraph, October 13 had been prescribed as the expiration of the sixty day period. That suggests the proposition, which we do not care to decide, that, within the authority granted by the act, the proclamation may have declared the laws generally applicable to the lands remaining undisposed of on October 14, 1906, even though that day might be held to have been within the sixty day period. We are, however, satisfied that a proper construction of the provision exempting the lands from general settlement and entry during the first sixty days requires the inclusion of the day upon which the lands were opened for settlement and entry in computing the sixty day period.

It is further contended that the locations of the defendants should be held to be void for the reason that they had gone upon and occupied some of these lands, or other lands in close proximity thereto, before the expiration of the sixty day period and had remained there until they made their locations. It appears from the evidence that the defendants commenced to make their locations very early in the morning of October 14, 1906, that is to say, shortly after midnight of October 13th, from which fact, and the distance from the exterior lines of the claims to the places where the location notices were posted, it is argued that it sufficiently appears that the persons posting the notices were within the limits of the respective claims before midnight of October 13. It is seriously contended that in thus entering upon the premises the defendants violated the Act of Congress and the proclama-

tion, and thereby rendered themselves disqualified to make their locations. In support of that contention, several cases are cited under the Acts of Congress and the proclamation of the President opening to entry under the homestead laws the ceded lands in Oklahoma. (Smith v. Townsend, 148 U. S. 490; Payne v. Robertson, 169 U. S. 323; Calhoun v. Violet, 173 U. S. 60.) Those decisions are not, in our opinion, applicable.

The statutes under consideration in the Oklahoma cases not only prohibited any person from *entering upon* any of the lands prior to the time that they were opened for settlement, but provided as a penalty that no person violating such provision should ever be permitted to enter any of said lands or acquire any right thereto.

The act we are here considering does not in terms prohibit any person from the act of going or entering upon the lands. It provides that no person shall be permitted to "settle upon, occupy or enter said lands" until after the expiration of the period of sixty days, except as prescribed in the proclamation. The words "settle upon, occupy and enter" were used, we think, in their technical sense as acts incident to the appropriation of the lands, and as initiating a right to claim or acquire title under the land laws, and did not have the effect of prohibiting the mere presence of a person upon the land. Immediately preceding the provision employing these words it is declared that on a specified date the lands shall be opened "to settlement and entry," and in other places throughout the act where the same or equivalent words are used they clearly import an act authorized or required by law as a means of acquiring a right to the public lands. And in the proclamation the words are used in the same sense. This is noticeable in the paragraph calling attention to the provision of the act under consideration, and declaring the application of the general provisions of certain land laws after the expiration of the sixty day period. Beyond that, however, there is no penalty as in the acts concerning the Oklahoma lands for a violation of the pro-

vision, and it is not, therefore, clear that the presence of the defendants within the limits, or in the neighborhood, of their claims, prior to the time of their location or before the expiration of the sixty day period, even if that amounted to a violation of the act or the proclamation of the President, would be sufficient to prevent them from making a valid location under the mining laws upon the ceded lands after such lands became subject to location thereunder. (Noonan v. Caledonia Mining Co., 121 U. S. 393, and Kendall v. San Juan Mining Co., 144 U. S. 658.) The first case cited involved mining locations in the Black Hills of Dakota within the territory which was ceded by the Indians to the United States by an agreement ratified by Act of Congress February 28, 1877. Prior to that cession, a stipulation in the treaty with the Indians was in force providing that no person, with certain exceptions, should be permitted "to ever pass over, settle upon or reside in the territory" embraced in the reservation. It was held that, although a party had gone upon the reservation in violation of the treaty and located a mining claim, if he was in possession of it on the date when it became a part of the public domain, with a requisite discovery, with the surface boundaries sufficiently marked, with a notice of location posted, and with a disclosed vein of ore, he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor, or making the improvements necessary to hold the claim, date his rights as of that day; and that such location and labor and improvements would give him the right to possession.

In the later case of Kendall v. San Juan Mining Co., it appeared that the mining claimants, who had intruded upon Indian territory in violation of the treaty with the Indians and located a mining claim thereon, had failed, after the extinguishment of the Indian title, and within the period prescribed by the laws of the State, and until after the premises had become properly located by others, to make a new record of their location; and hence it was held that they could not claim a priority based upon their

original wrongful entry during the existence of the Indian reservation. It was said, however, in the opinion, "Had the plaintiffs, immediately after the withdrawal of the reservation, located their Bear lode, their position would have been that of original locators. They would then have been within the rule in Noonan v. Caledonia Mining Co."

The locations here in question were each and all made at a time when the lands were subject to location and when the parties making them had a right to be upon the ground for that purpose, and although there might have been a treaty making their original presence on the lands unlawful, as in the case of Noonan v. Caledonia Mining Co., *supra,* or if they were forbidden by the Act of Congress from going upon the premises before the date of their locations, the prohibition in either case had ceased at the time the locations were made. Upon such a state of facts appearing in the case of Noonan v. Caledonia Mining Co., *supra,* the Court said: "The effect of the withdrawal of the district from the reservation, and the consequent end of the prohibition, was to leave the predecessors of the plaintiff exempt from liability to be disturbed for their unlawful entry on the land, and free to take measures under the mining laws for the perfection of their claims. Evidence of what had been done by them, the location of their claim, its extent, the amount of work done in its development, was competent, not as creating any absolute right to the property, but as showing the existence and condition of the property when their possession became lawful under the new agreement. Whether they should be protected in holding the property afterwards, depended upon their future compliance with the laws, statutory and mining, governing the possession and use of mineral lands in Dakota."

But it is unnecessary to further consider the question from the standpoint of a violation of the provisions of the act on the part of the defendants, for we fail to find in the act any provision that can reasonably be construed as making their mere entry upon the lands in dispute prior to

the expiration of the sixty day period unlawful. It is, of course, true that they could not legally have initiated any rights under the mining laws within that period. But they did not attempt to do so. They claim only under locations initiated and made after the sixty days had expired.

The only other questions discussed in the brief for plaintiff in error have reference to the Squawman lode, which was located October 15, 1906, in the names of the defendants in error, Minor and Lawton. At the time of bringing the suit and until the evidence had been taken upon the trial, Lawton was not named as one of the defendants. It appears by the journal entries in the cause that on December 30, 1907, which also appears to have been the last day of the trial, an order was made upon the motion of said Lawton that his name be entered upon the pleadings and judgment and orders of the court as a party defendant, "in accordance with the evidence proven on the trial of said cause," and it is stated in said journal entry that the plaintiff excepted to the order. The motion upon which the order was made does not appear to be incorporated in the bill of exceptions, and we are unable to find any reference in the bill of exceptions to such motion or to any ruling of the court upon it, or to the order or exception thereto. The proceeding by which Lawton was made a defendant is not, therefore, properly before us for consideration.

It is, however, contended that the evidence disclosed that the Squawman lode was located by Mr. Minor in the absence of Lawton, and that there is no evidence to show that Lawton had previously authorized Minor to locate the claim or had ratified the act of location, for which reason it is argued that the evidence is insufficient to support the judgment and finding in favor of the defendant in error Lawton. We think it unnecessary to consider these questions. It appears by the judgment that so far as the lode in question was concerned, the defendants Minor and Lawton were found to be the owners and entitled to

the peaceable possession of the claim, and it was adjudged that they were entitled to the possession thereof "as against the plaintiff." It appears that the Squawman lode was located entirely within the limits of the Hawley lode claimed by and awarded to four of the other defendants, and therefore conflicted with it, and that one of the purposes at least in locating it was to cover that much of the territory by prior location in case the location of the Hawley claim should be held to be premature because made October 14th. The owners of the Hawley claim are not complaining of the finding and judgment as to the "Squawman," and as the premises included within the latter claim were, so far as the plaintiff is concerned, properly awarded to the owners of the Hawley claim, it is not perceived that the error, if any, in awarding possession to Minor and Lawton to the premises embraced within the Squawman claim as against the plaintiff was prejudicial to the latter.

For the reasons above stated, we find no prejudicial error in the record, and the judgment will be affirmed.

*Affirmed.*

BEARD, J., and SCOTT, J.; concur.