## LANE, SECRETARY OF THE INTERIOR, *v.* HOGLUND.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 365.   Argued April 11, 1917.—Decided May 21, 1917.

Section 7 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099, lays upon the Secretary of the Interior a plain duty to cause a patent to be issued upon a homestead entry when no contest or protest proceeding has been initiated and no order has been made, in his Department, for the purpose of challenging the validity of the entry, within two years from the issuance of the final receiver's receipt.

An adverse report by a deputy supervisor of a National Forest, challenging a homestead entry within the forest for insufficiency of residence and cultivation, but merely filed in the General Land Office and not acted on until after the two year limitation period had expired, *Held* not a "pending contest or protest" within the meaning of § 7 of the Act of March 3, 1891, *supra.*

Notwithstanding its reluctance to award or sustain a writ of mandamus against an executive officer, the court is constrained to do so where the duty sought to be enforced is plain and nondiscretionary and the situation exigent.

44 App. D. C. 310, affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful,* with whom *Mr. S. W. Williams* was on the brief, for plaintiff in error.

*Mr. F. W. Clements,* with whom *Mr. B. E. Hinton* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a petition for a writ of mandamus against the Secretary of the Interior. In the court of first instance the writ was refused, but the Court of Appeals directed that it be granted, 44 App. D. C. 310, and our jurisdiction arises out of the fact that the construction of a statute of the United States and the duty of the Secretary of the Interior thereunder are drawn in question. The statute is the following provision in § 7 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099:

"That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or preëmption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled

to a patent conveying the land by him entered, and the same shall be issued to him."

What is meant by a "pending contest or protest" is the question under the statute. The facts are not in dispute and are these:

In 1902 Svan Hoglund settled upon and made preliminary entry under the homestead law of a tract of public land in the Eureka land district in California. In 1905 the land was included within a national forest reserve by a proclamation of the President, 34 Stat. 3001, which contained the following excepting clause:

"Excepting from the force and effect of this proclamation all lands which may have been, prior to the date hereof, embraced in any legal entry or covered by any lawful filing duly of record in the proper United States Land Office, or upon which any valid settlement has been made pursuant to law, and the statutory period within which to make entry or filing of record has not expired; *Provided*, that this exception shall not continue to apply to any particular tract of land unless the entryman, settler or claimant continues to comply with the law under which the entry, filing or settlement was made."

In due time thereafter, and after due notice by publication of his purpose so to do, Hoglund submitted final proof of compliance with the homestead law and of his right to obtain the title. The proof was accepted as satisfactory by the local officers and on August 6, 1907, a receiver's receipt and a register's certificate upon final entry were regularly issued to him.

May 29, 1909, a report from a deputy forest supervisor recommending the cancellation of the entry "on account of non-residence and lack of cultivation" was received at the General Land Office. The report indicated that the entryman was a single man, and had a three-room house, a small barn and some fencing on the land; that he had three acres plowed and under cultivation; that the land

had much valuable timber thereon, but none had been cut except for improvements, and that the entryman had established actual residence on the tract in June, 1902, but had really lived thereon only at unnamed periods, "going away to work for wages four or five months at a time." No action upon this report was taken until April 19, 1910. On that day, almost three years after the date of the receiver's receipt, the Commissioner of the General Land Office ordered a proceeding in the local land office to determine whether the entryman had established and maintained a residence upon the land. Notice of this was given to him—apparently it was his first information that his entry was called in question—and a hearing was had. The local officers and the Commissioner of the General Land Office in turn found the facts in his favor, but the Secretary of the Interior found them the other way and ruled that the entry was not confirmed or protected by the provision in § 7 of the Act of March 3, 1891, *supra.* 42 L. D. 405; 43 L. D. 538 and 540.

The Secretary directed that the entry be cancelled and the present petition was then filed. It prayed for a writ of mandamus commanding the Secretary to recall the order for the cancellation of the entry, to reinstate the entry upon the records and to cause a patent to be issued to the entryman.

For present purposes no importance attaches to the creation of the forest reserve after the primary and before the final entry. The entryman was free under the terms of the President's proclamation to proceed with the steps essential to obtain a final entry and ultimately the full title, and to such a final entry the statute—the provision in § 7—has the same application as if the land were without instead of within the reserve.

The statute makes it very plain that if at the expiration of two years from the date of the receiver's final receipt there is no "pending contest or protest" against the entry

its validity no longer may be called in question—in the words of the act, "the entryman shall be entitled to a patent . . . and the same shall be issued to him." The purpose to fix his right and to command its recognition is obvious. What, then, is the "pending contest or protest" which is to exclude a subsisting entry from this statute of limitation and repose? Is it some proceeding which is begun, ordered or set in motion in the interest of another claimant or of the public to test or determine the validity of the entry? Or may it be a mere report, letter or other communication, confidential or otherwise, which has not been and may never be acted upon, which may be neither known nor accessible to the entryman, or which may be so general, vague or intemperate in its statements as not in itself to merit attention? Independently of the occasion for the enactment and of the practice of the Land Department, there hardly could be any difference of opinion about the answer. And when these are understood we think there is no room whatever for a difference; in short, the reference is to a proceeding against the entry and not to some communication which at most is only suggestive of the propriety of such a proceeding and may never become the basis of one.

As applied to public land affairs the term "contest" has been long employed to designate a proceeding by an adverse or intending claimant conducted in his own interest against the entry of another, and the term "protest" has been commonly used to designate any complaint or objection, whether by a public agent or a private citizen, which is intended to be and is made the basis of some action or proceeding in the public right against an existing entry. This explains the use in the statute of both terms in the disjunctive, and accords with the instructions of May 8, 1891, 12 L. D. 450, wherein each term is spoken of as meaning a "proceeding" under the Rules of Practice to cancel or defeat an entry, and wherein it is said that

"when there are no proceedings initiated within that time [the two years] by the government or individuals the entryman shall be entitled to patent." The same view is shown in the supplemental instructions of July 1, 1891, 13 L. D. 1, wherein the Secretary said to the Commissioner: "You will, therefore, approve for patent all entries against which no proceedings were begun within the period of two years from the date of the final certificate, but where proceedings have been, or shall be, begun within the specified period, the entry will be held to have been taken out of the operation of this statute, and such cases will proceed to final judgment as heretofore."

Subject to some exceptions and qualifications which need not be specially noticed, this continued to be the view and practice of the Land Department for many years and in conformity therewith many thousands of entries were carried to patent or otherwise as their particular facts caused them to fall upon one side of the line or the other. But in the case of *Mertie C. Traganza*, 40 L. D. 300, decided November 17, 1911, a sharp departure was taken from the earlier view and it was held that the statute has "no reference to proceedings by the United States, or its officers or agents" against such entries and does "not affect the conduct or action of the Land Department in taking up and disposing of final proof of entrymen after the lapse of the two years mentioned in the act." That view, however, did not long have the approval of the Department. In the case of *Jacob A. Harris*, 42 L. D. 611, decided December 13, 1913, the subject was reconsidered, attention being given to the occasion for the enactment and to its prior administration, and the conclusion was reached that the earlier view, long maintained, was right and that the practice thereunder should be restored. In that case, as in this, a forest officer reported that the claimant had not established or maintained a residence upon the land, and no action was

taken on the report until after the expiration of the two-year period. But in that case the entry was held to be confirmed under the statute while here the ruling was the other way. Of the situation which prompted the enactment of the statute it was said in the decision in that case:

"The records of this Department disclose that, during several years preceding 1891, a very large number of entries were suspended by the General Land Office on vague and indefinite suggestions of fraud or noncompliance with law, to await investigation by special agents of that bureau. These suspensions were so numerous and the force available for investigation was so insufficient as to create a practical blockade in the issuance of patents to the serious prejudice of *bona fide* claimants under the public land laws. In many instances, the charge or suggestion upon which the suspension was ordered had no foundation of fact other than the proximity of the land to other tracts embraced in entries alleged to be fraudulent or otherwise illegal. The reports of this Department to the public land committees of the Senate and House of Representatives, concerning this legislation, and the debates of those bodies thereon, leave no doubt of the purpose of Congress that said proviso should correct the hardship of this situation and provide against a repetition thereof."

And it was also said:

"Passed, primarily, to rectify a past and to prevent future abuses of the departmental power to suspend entries, the proviso is robbed of its essential purpose and practically repealed by the decision in the Traganza case. . . .

"Upon mature consideration, the Department is convinced that a contest or protest, to defeat the confirmatory effect of the proviso, must be a proceeding sufficient, in itself, to place the entryman on his defense or to require of him a showing of material fact, when served with notice thereof."

That decision was followed in *George Judicak*, 43 L. D. 246; *Joseph Crowther, ibid.* 262; Instructions, *ibid.* 294 and 322.

Looking, then, at the statute in the light of all that bears upon its purpose and meaning, we think it certainly and unmistakably lays upon the Secretary of the Interior, as the head of the Land Department, a plain duty to cause a patent to be issued to a homestead entryman whenever it appears, as concededly it did in this instance, that two years have elapsed since the issue of the receiver's receipt upon the final entry and that during that period no proceeding has been initiated or order made which calls in question the validity of the entry. In the exercise of its discretion Congress has said, in substance, by this statute that for two years after the entryman submits final proof and obtains the receiver's receipt the entry may be held open for the initiation of proceedings to test its validity, but that if none such be begun within that time it shall be passed to patent as a matter of course. Thus in a case like this, where according to the conceded facts no proceeding was begun within the prescribed period, there is no room for the exercise of discretion or judgment, but on the contrary a plain duty to see that the entryman receives a patent.

True this court always is reluctant to award or sustain a writ of mandamus against an executive officer, and yet cases sometimes arise when it is constrained by settled principles of law and the exigency of the particular situation to do so. *Kendall* v. *United States*, 12 Pet. 524; *United States* v. *Schurz*, 102 U. S. 378; *Roberts* v. *United States*, 176 U. S. 221; *Garfield* v. *Goldsby*, 211 U. S. 249; *Ballinger* v. *Frost*, 216 U. S. 240. And see *Noble* v. *Union River Logging Railroad Co.*, 147 U. S. 165; *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94. This, we think, is such a case. As quite apposite we excerpt the following from the unanimous opinion in *Roberts* v. *United States, supra*, p. 231:

"Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, nor how plainly they violated their duty in refusing to perform the act required."

We therefore conclude that the Court of Appeals rightly directed that the writ be granted.

*Judgment affirmed.*