# UNITED STATES EX REL. ASHLEY *v.* ROPER.

MANDAMUS; RELATOR; DISCRETION; MINISTERIAL ACT.

1. A relator seeking a mandamus for the abrogation of a decision of Treasury officials under which a druggist had refused to refill a prescription has, in the opinion of the court, no right to maintain the action where he does not allege that the prescription would have been refilled if it were not for such decision, but the court does not place its judgment on that ground alone. (Mr. Justice ROBB dissenting.)

2. Where executive officers of the government are directed by an act of Congress to interpret the act for any purpose, and there is room for more than one construction, the action of the officials in selecting the one rather than the other will not be interfered with by the courts through mandamus.

3. Mandamus to compel the abrogation of a decision of treasury officials construing the act of Congress known as the Harrison Narcotic Act (38 Stat. at L. 785, chap. 1, Comp. Stat. 1916, sec. 6287h), holding that prescriptions referred to in sec. 2 did not come within the definition of "preparations" or "remedies" in sec. 6, cannot be maintained, as the decision is not ministerial, but is an exercise of discretion in the interpretation of the statutory provisions which are open to at least two constructions.

No. 3125. Submitted March 4, 1918. Decided May 27, 1918.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia denying a writ of mandamus to compel the Secretary of the Treasury to abrogate his decision construing an act of Congress.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

The relator, George B. Ashley, applied to the lower court

NOTE.—On power of court to compel performance of ministerial duty by departmental officer of the government, by mandamus, see note in 52 L.R.A.(N.S.) 419.

for a mandamus against the Secretary of the Treasury and the Commissioner of Internal Revenue, commanding them to abrogate a decision of theirs construing an act of Congress known as the Harrison Narcotic Act (38 Stat. at L. 785, chap. 1, Comp. Stat. 1916, sec. 6287g), on the ground that the decision was in conflict with the act. His application was denied and he appeals.

By sec. 1 of the act "every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away" certain enumerated narcotic drugs, is required to register with the Collector of Internal Revenue, except employees of such persons, and certain officers of the United States government. All who register are required to pay a tax of $1 per year. It is made unlawful for any person required to register to deal in the drugs without having registered and paid the tax. The same section directs the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make all needful rules and regulations for carrying the act into effect.

Section 2 says it shall be unlawful for any person to sell, etc., any of the drugs except in pursuance of a written order of the person to whom it is sold, which must be upon a form issued by the Commissioner of Internal Revenue. It also provides that the person who accepts such an order shall preserve it for a period of two years, and that every person who gives it shall keep a duplicate for the same period; and then adds that nothing in the section shall apply (a) to the dispensing or distribution of the "drugs to a patient by a physician, dentist or veterinary surgeon registered under this [the] act in the course of his professional practice only;" provided he shall keep for two years a record of the drugs dispensed, and "the date, and the name  *  *  *  of the patient to whom" they were dispensed; or (b) to the sale of the drugs in pursuance of a written prescription by a physician, etc., provided that the prescription shall be dated and signed by the person issuing it, and that the dealer who fills the prescription shall preserve it for a period of two years from the day on which it was filled. There are other exceptions, but we do not deem

it necessary to mention them. Section 2 also requires that the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable order blanks to be prepared for sale at $1 per hundred to the persons who have registered and paid the tax, to be used by them in ordering the drugs.

By sec. 6 the provisions of the act are made inapplicable to the sale, distribution, etc., of "preparations and remedies which do not contain more than * * * one fourth of a grain of morphine," etc., provided the remedies and preparations are sold or distributed as medicines, and not for the purpose of evading the act. We do not mention other sections, because they are not material to the question before us.

Assuming to act in pursuance of the provision requiring him, with the approval of the Secretary of the Treasury, to make all needful rules and regulations for carrying the act into effect, the Commissioner of Internal Revenue decided that the prescriptions referred to in sec. 2 did not come within the definition of "preparations" or "remedies" mentioned in sec. 6; that the exemptions in sec. 6 relating to preparations and remedies did not apply to prescriptions; that a prescription "containing a narcotic drug in any quantity * * * must have indicated thereon the name and address of the patient, the date, the name, and address of the physician, and his registry number;" and that "such 'prescriptions' cannot be refilled and must be filed for a period of two years."

The relator procured from a physician a prescription calling for one fourth of a grain of morphine, the amount excepted from the act by sec. 6 when contained in "preparations and remedies," and had it filled. Later he applied to the druggist to have it refilled; but the latter refused on the ground, as stated by relator, that he, the druggist, "could not legally refill the same under Treasury decision 2309," being the one just referred to. The relator asserts that the action of the druggist was "wholly unwarranted and unlawful under the requirements of sec. 6" of the act; that the above-mentioned decision of the Commissioner of Internal Revenue and the Secretary of the Treasury, to whom we shall hereafter refer as the Treasury

officials, was "merely a ministerial act or duty," and was "issued and passed in contravention" of the act. He asked, therefore, that the writ issue "commanding them to abrogate and cancel said Treasury decision 2309 and all other Treasury decisions or regulations in conflict with and in derogation of said" act. The druggist was not made a party.

*Mr. Eugene C. Brokmeyer* and *Mr. Leonard Mather,* for the appellant, in their brief cited:

*American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 108; Article 9, International Opium Convention; *Ayres* v. *State Auditors,* 42 Mich. 1; *Bean* v. *People,* 33 How. Pr. 69; *Board of Liquidation* v. *McComb,* 92 U. S. 531, 536; *Re Bruendl,* 102 Wis. 48; *Crawford* v. *District School Board,* 68 Or. 388; 26 Cyc. 401; *Dubose* v. *Woods,* 162 S. W. 3; *Dullea* v. *Peabody,* 219 Mass. 196; *Edwards* v. *State,* 121 Ind. 453; *Field* v. *Clark,* 143 U. S. 694; *Green* v. *Mumford,* 5 R. I. 472; *Griffin* v. *United States,* 30 App. D. C. 291; House Report No. 23, 63d Congress 1st Session; *Kellar* v. *United States,* 213 U. S. 737; *Louisiana* v. *McAdoo,* 234 U. S. 627; Medical & Pharmaceutical Authorities; *Patterson* v. *Kentucky,* 97 U. S. 501; *People* v. *Contracting Board,* 46 Barb. 254; *People* v. *Commissioners,* 4 Neb. 1; *Pumphrey* v. *Mayor,* 47 Md. 145; *Railway* v. *Hall,* 91 U. S. 343; *Ray* v. *Burbank,* 61 Ga. 505; *Robbins* v. *R. Co.* 100 Me. 496; *State* v. *Bluefield Drug Co.* 27 S. E. 352; *State ex rel.* v. *Bowine,* 13 Enc. Pl. & Pr. 636; *Mississippi* v. *Johnson,* 71 U. S. 475; *State ex rel. Tarr* v. *Mayor,* 32 Neb. 568; *State* v. *Dreyer,* 183 Mo. App. 490; *Seymour* v. *United States,* 10 App. D. C. 569; *St. David's Church* v. *Sayen,* 244 Pa. 300; *State* v. *Commissioners,* 39 Ohio St. 188; *State ex rel.* v. *Wilson,* 158 Mo. App. 139; Treasury Decision, 2200; *United States* v. *Antikamnia Chemical Co.* 231 U. S. 419; *United States* v. *Eaton,* 144 U. S. 677; *United States* v. *Grimaud,* 220 U. S. 506; *United States ex rel. Daly* v. *MacFarland,* 28 App. D. C. 569; *United States* v. *Jin Fuey Moy,* 241 U. S. 394; *United States ex rel. Thompson* v. *Custis,* 35 App. D. C. 252; *United States ex rel. Romero* v.

*Cortelyou,* 26 App. D. C. 300; *Weeks* v. *Smith,* 81 Me. 1; *Windsor* v. *Polk Co.* 115 Iowa, 738.

Mr. *John E. Laskey,* United States Attorney, District of Columbia, and Mr. *Charles W. Arth,* Assistant, for the appellees:

Whether the Commissioner's interpretation of the statute in this respect be legally sound or unsound, it has absolutely no bearing on the right of the appellant to the relief he seeks under the proceeding at bar, for the reason that the law itself, and not the decision of the Commissioner, fixes the restrictions in the sale of the drugs aforesaid. *United States ex rel. Alsop Process Co.* v. *Wilson,* 33 App. D. C. 472.

The question as to whether or not a prescription calling for narcotic drugs can be refilled remains to be decided when the Commissioner of Internal Revenue recommends to the proper official the prosecution of a dealer for his having refilled such a prescription; or, in a suit by a person occupying the status of relator, against a druggist, because of the druggist's refusal to refill the same. *Cardozo* v. *Baird,* 30 App. D. C. 86.

The decision of the Commissioner of Internal Revenue affects only dealers in the drugs mentioned in the act. The relator is not a dealer in such drugs. The effect of such decision was merely this: That those employees of the United States, acting under the direction of the Commissioner of Internal Revenue in the enforcement of the Harrison Narcotic Law, should see to it, in the performance of their official duties, that such prescriptions be registered and kept on file, in accordance with the Commissioner's interpretation of the law.

It is possible that in a proper proceeding the interpretation of the Harrison Narcotic Law, as expressed by the Commissioner of Internal Revenue in T. D. 2309, may be found to be legally unsound, but it is respectfully submitted that the remedy sought by appellant in the case at bar is not the proper way to test this point. *Tucker* v. *Williamson,* 229 Fed. 201;

*Re Kollock,* 165 U. S. 526; and *Prather* v. *United States,* 9 App. D. C. 82.

Mandamus is not the proper remedy.

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Field* v. *Clark,* 143 U. S. 694.

"The writ of mandamus issues to compel the performance of a plain duty imposed by law." *Kimberlin* v. *Commission* (1900, C. C. A. 8th Cir.) 104 Fed. 653. See also *Seymour* v. *South Carolina* (1894) 2 App. D. C. 240; *Seymour* v. *Brodie,* 10 App. D. C. 567; *United States ex rel. Dunlap* v. *Black,* 128 U. S. 40; *Louisiana* v. *McAdoo,* 234 U. S. 627.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

He who applies for a mandamus must clearly establish his right to it. *Ex parte Fleming,* 2 Wall. 759, 17 L. ed. 924. It is not a writ of right. *United States ex rel. Turner* v. *Fisher,* 222 U. S. 204, 209, 56 L. ed. 165, 168, 32 Sup. Ct. Rep. 37; *Garfield* v. *United States,* 31 App. D. C. 332, 335. At the very outset the right of the relater to maintain the action is challenged. He does not allege that the druggist would refill the prescription if it were not for the decision of the Treasury officials. For aught that appears the druggist may have had many reasons, other than the one assigned, for his refusal. If he had, then the granting of the mandamus would not secure to the relater what he desires, for the druggist might still refuse; and if it would not, the relater has not a direct legal interest in the relief which he seeks. There is nothing in *Truax* v. *Raich,* 239 U. S. 33, 60 L. ed. 131, L.R.A.1916D, 545, 36 Sup. Ct. Rep. 7, Ann. Cas. 1917B, 283, in conflict with this. In that case Raich brought suit against his employer, Truax, and certain state officers of Arizona, alleging that, under a statute of that State requiring every employer of more than five workers at one time to employ not less than 80 per cent of qualified electors, his employer was about to discharge him, he not being a qualified elector, for the *sole* reason that, if he

was not discharged, the employer would be punished under the statute, which was a criminal one. Raich asked for an injunction restraining the defendants from acting under the statute. It was claimed by the state officers that as Raich was an employee at will, his employer might discharge him at any time irrespective of the statute; that the injunction would not save for him his position, and therefore he had no direct legal interest in securing it. But the court rejected this argument and said: "It sufficiently appears that the discharge of the complainant will be solely for the purpose of meeting of the requirements of the act and avoiding threatened prosecution under its provisions." There is no allegation here, as we have observed, that the druggist refused to refill the prescription *solely* because of the Treasury decision. While we are of the opinion that the relater, for the reasons stated, has no right to maintain this action, we are not willing to place our judgment upon that ground alone.

Where executive officers of the government are directed by an act of Congress to interpret the act for any purpose, and there is room for more than one construction, the action of the officials in selecting the one rather than the other will not be interfered with by the courts through mandamus. In such a case, the officers exercise a discretion lodged in them by the legislature, and the courts have no power to control the exercise of that discretion. If they had, then it would be their judgment, and not the judgment of the executive officers, which would prevail, although Congress had directed otherwise.

In *Decatur* v. *Paulding,* 14 Pet. 497, 515, 10 L. ed. 559, 568, it was said: "The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it, by mandamus, act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties. * * * The interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief; and we are quite satisfied that such

a power was never intended to be given to them." See also *Handel* v. *Lane,* 45 App. D. C. 389; *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 56 L. ed. 610, 32 Sup. Ct. Rep. 356. Of course, as was said in *Lane* v. *Hoglund,* 244 U. S. 174, 61 L. ed. 1066, 37 Sup. Ct. Rep. 558, quoting with approval from *Roberts* v. *United States,* 176 U. S. 221, 44 L. ed. 443, 20 Sup. Ct. Rep. 376: "If the law direct him [an executive officer] to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer." In other words, where there is no discretion given to the executive officer, the act is ministerial, and, of course, subject to control by the courts. *Mississippi* v. *Johnson,* 4 Wall. 475, 18 L. ed. 437. But where the power granted is not ministerial, but discretionary, the officer is free to adopt any of the positions warranted by the statute he is called upon to construe, and in such case the courts will not revise his judgment. It is equally true, as said in the *Roberts Case, supra,* that the courts are always "reluctant to award or sustain a writ of mandamus against an executive officer."

Having these rules to guide us, we proceed to inquire whether or not the language of the statute under analysis is susceptible of more than one meaning, and, if so, whether the decision of the Treasury officials in question falls within one of the meanings.

The act is a revenue measure whose constitutionality has been sustained. *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 60 L. ed. 1061, 36 Sup. Ct. Rep. 658. As we have already observed, it makes two exceptions *inter alia* from its requirements that the drug shall be dispensed only on orders written on blanks purchased from the Commissioner of Internal Revenue; namely, when it is dispensed (a) on "prescriptions," and (b) in "preparations and remedies." Relator puts his argument against the decision of the Treasury officials on two grounds: (1) That the duty imposed upon them by the act is simply ministerial, and (2) that their decision is in derogation of the statute.

The contentions for and against him may be arranged in two categories.

First: On his behalf it is said that when a physician gives written directions for the drug unassociated with other elements, it is a "prescription" within the meaning of sec. 2, subdivision *b,* but when his directions call for the drug in association with other elements it is not a "prescription," but a "preparation" or a "remedy," according to sec. 6; that unless this view is taken we shall have a situation in which a druggist may not refill a prescription for the amount of the drug exempt under sec. 6, but may freely dispense that amount of the drug in the form of a preparation or remedy; and that a construction which would lead to such a result would be unreasonable and hence must be rejected. It is further asserted that if this view be not correct, the term "prescription" in subdivision *b,* when properly understood, does not mean the written directions of the physician, dentist, or veterinary surgeon, but comprehends the mixture of drugs prepared by the pharmacist in response to such directions, and is therefore a preparation or a remedy within the meaning of sec. 6; and finally that whichever one of these views is right, a prescription, such as relator's, which does not contain more than the permitted amount of the drug under that section, is not subject to the act, and may be refilled as often as desired.

Second: On the other hand it is claimed that the statute distinguishes "prescriptions" from "preparations and remedies," making the one subject to some of its provisions and excluding the other, but does not make any distinction between prescriptions themselves, as contended for by relator,—that all prescriptions are treated alike; that it is competent for Congress in a revenue act to fix the conditions upon which it will exempt certain articles from the fee or charge otherwise required; that if in doing so, as in the act before us, it discriminates between cases in which the drug is dispensed on a prescription of a physician, dentist, or veterinarian, and those in which it is dispensed as a part of a "preparation and remedy," no one has a right to complain unless it be the dealer against whom the discrimination is made; that the word "prescription" has two

meanings,—one comprehending the written directions of the physician and the other the drug compound prepared in compliance with his directions (Webster's Dict.) ; that the term is used in subdivision *b* according to the first sense, for it provides that the prescription must be dated, signed, and filed, and these requirements indicate that the written directions, and not the compound, are intended, because the latter cannot be dated, signed, and filed; that the filling of the prescription executes it; and that the prescription ceases to have any force after that, and hence cannot be refilled; also that since the act may be assumed, according to the Supreme Court of the United States, to have "a moral end as well as a revenue in view" (*United States* v. *Jin Fuey Moy,* 241 U. S. 402, 60 L. ed. 1064, 36 Sup. Ct. Rep. 658, and since no one not registered can procure the drug except upon the judgment of a physician, dentist, or veterinary surgeon, expressed in writing in the form of a prescription, that his patient's health requires it at the time of issuing the prescription, this would be defeated at least in large part if the patient could have it refilled whenever he pleased irrespective of whether it was for his benefit or not.

Both lines of argument have, we think, a basis in the statute, and we mention them not for the purpose of indicating our opinion as to which one is correct, but to show that the statute is open to at least two constructions, and that the Treasury officials in adopting one rather than the other did that which they were authorized to do, and hence their action is not subject to our control.

For the reasons given in the foregoing opinion, the judgment is affirmed at the costs of the appellant. *Affirmed.*

Mr. Justice ROBB dissenting:

There is an averment in both the petition and the amended petition that the refusal of the druggist to refill the prescription was because he "could not legally refill the same under Treasury decision 2309." In other words, according to this averment the sole reason assigned by the druggist for his refusal to refill this prescription was the existence of Treasury decision 2309, which

in effect prohibits such refilling.  I think this averment is suffi-
cient to bring the case within the rule in *Truax* v. *Raich*, 239
U. S. 33, 60 L. ed. 131, L.R.A.1916D, 545, 36 Sup. Ct. Rep.
7, Ann. Cas. 1917B, 283, where an employee was discharged by
his employer because of fear of the penalties that otherwise
would have been incurred.  The court said:  "It sufficiently
appears that the discharge of the complainant will be solely for
the purpose of meeting of the requirements of the act and avoid-
ing threatened prosecution under its provisions.  It is therefore
idle to call the injury indirect or remote."

The first five sections of the Harrison Act deal with certain
narcotic drugs, or any compounds or derivatives thereof.  The
intent of Congress in these sections was carefully to restrict the
sale or distribution of such habit-forming *drugs*.  Section 6,
however, with which we here are concerned, expressly exempts
from the provisions of the act "preparations and remedies"
which do not contain more than a specified amount of such
drugs, provided that "such *remedies* and *preparations*" are used
solely as medicines.  It thus appears that the first five sections
deal with certain drugs when sold as such, while sec. 6 deals
with remedies one of the ingredients of which is a drug men-
tioned in the preceding sections.

The Treasury Department promulgated said regulation No.
2309, under which the exemptions in sec. 6 are declared to
"apply exclusively to ready-made preparations and remedies
prepared in accordance with the United States Pharmacopeia,
National Formulary, or other recognized or established formu-
lary, usually carried in stock by the dealer and sold without a
prescription," etc.  In other words, had the druggist who filled
appellant's prescription been sufficiently impressed with its
merit to warrant him in placing the remedy or preparation on
the market, and thereupon had made up a quantity of bottles to
supply the anticipated demand, he might have passed out one
of those bottles to appellant when he applied to have his pre-
scription refilled, without incurring the pains and penalties of
the law.  This must be so, because admittedly this particular
remedy contains less than the prescribed amount of the habit-
forming drugs mentioned in sec. 6, and admittedly was to be

used by appellant solely as a medicine. The above illustration, in my view, demonstrates the unreasonableness of the position of the Treasury Department. The effect of the Treasury decision in question is to discriminate against preparations and remedies prescribed by reputable physicians, in favor of patent medicines. Of course, the druggist is powerless, and must subordinate his will to that of the Treasury Department, or suffer prosecution.

Believing that the view of the Department is so unreasonable as to be arbitrary, and hence within the power of the court to control (*Lane* v. *Hoglund,* 244 U. S. 174, 61 L. ed. 1066, 37 Sup. Ct. Rep. 558), I respectfully dissent.

A motion for a rehearing was denied August 12, 1918.