**WILLIAMS v. NEWMAN et al. (KOEHLER, Intervener).**

(District Court, D. Oregon. March 31, 1919.)

1. PUBLIC LANDS ⚖106(1)—LAND DEPARTMENT—CONCLUSIVENESS OF FINDINGS.

 The Land Department's findings upon questions of fact are conclusive.

2. PUBLIC LANDS ⚖106(2, 3)—LAND DEPARTMENT—REVIEW.

 Land Department rulings, affected by a misconstruction of the law or by fraud, may be annulled by the courts.

3. PUBLIC LANDS ⚖106(1)—LAND DEPARTMENT—FINAL PROOFS.

 Questions involved by the presentation of final proofs by a homestead claimant, such as settlement, time of residence, cultivation, etc., are purely questions of fact, upon which the Land Department's decisions are conclusive.

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
 257 F.—23

4. PUBLIC LANDS ☞97—LAND DEPARTMENT—PROCEDURE.
Under Rev. St. §§ 441, 453, 2478 (Comp. St. §§ 681, 699, 5120), the Secretary of the Interior may suspend action upon final homestead proofs while inquiring into questions of fraud attending the acquiring of the land.

5. PUBLIC LANDS ☞106(1)—LAND DEPARTMENT—ADMINISTRATIVE POWERS.
While land is under the control of the Land Department, prior to issue of patents, the courts will not ordinarily interfere with departmental administrative procedure.

6. PUBLIC LANDS ☞102—FINAL PROOF—COMPLETION.
Rev. St. § 2301 (Comp. St. § 4589), providing that patent shall issue two years after the receiver's receipt upon final entry, if no contest or protest be pending, is inapplicable, where the receiver sent the final proof to the Land Department without issuing a receipt or declaring the proof insufficient, and does not preclude cancellation of the entry more than two years after the receiver's action.

In Equity. Suit by Ahijah Williams against Tracy Newman and the Bernardin Timber & Manufacturing Company, in which Henry Koehler intervened as a defendant. Complaint dismissed.

This is a suit on the part of Ahijah Williams to have the defendants Tracy Newman and Bernardin Timber & Manufacturing Company declared trustees of the land in dispute for his use and benefit. The controversy grows out of the circumstance that Newman was accorded a patent to the land by the Land Department of the general government, when it is alleged that Williams was rightfully entitled thereto.

The facts are, substantially, that plaintiff entered the land, the same lying within the boundaries of the former Siletz Indian reservation, as a homestead, April 23, 1901. Subsequently, on December 11, 1903, he made final proof, after publishing notice of his intention so to do. The proofs show that he made settlement upon the land on May 15, 1900. A special agent of the land office appeared at the time and cross-examined him. At the close of taking the proofs, further action was suspended at the request of such special agent; the case having been referred to him for investigation respecting plaintiff's good faith in prosecuting his claim for a homestead. By a letter of the Assistant Commissioner, addressed to the register and receiver, of date September 28, 1907, it appears that no report of the special agent touching his investigation of the matter had then reached the Commissioner's office. The plaintiff at the time tendered $6, the usual commission required for the service. The tender was refused by the receiver.

The plaintiff testifies here that Bibee, the receiver, told him, after the proofs were submitted, that he was entitled to the patent and would receive it. Judge Galloway, who was acting for the plaintiff at the time, says, "There were no objections found to the proof that was furnished by the claimant;" and later, that the receiver "spoke that the proof was very excellent," but that it was not accepted, and was "simply sent up to Washington for the consideration of the Commissioner." That, in effect, is what really happened. The final proof was sent up to Washington, without the issuance by the register and receiver of the usual final receipt or certificate.

Nothing further seems to have been done in the premises until February 26, 1907, when one E. W. Reder filed in the office of the register and receiver a contest respecting plaintiff's homestead. This, it will be perceived, was more than three years and two months after plaintiff had made and tendered his final proof. The contest was allowed under direction of the commissioner. Hearing was had on the 6th, 7th, 8th, and 9th of January, 1908. The plaintiff appeared at the hearing and resisted the contest, which resulted in a recommendation by the register and receiver that the contest be dismissed, and that the homestead entry of plaintiff be held intact. From this recommendation an appeal was prosecuted by Reder to the Commissioner of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

General Land Office. Upon consideration by that officer, the decision of the register and receiver was, on February 15, 1909, reversed, and the entry of plaintiff was held for cancellation. An appeal was prosecuted to the Secretary of the Interior. That officer dismissed the contest of Reder. However, as the plaintiff had offered testimony at the hearing upon the contest, the right of plaintiff to maintain his homestead entry was also considered, and the entry was canceled. The decision was pronounced May 29, 1909. A motion for a review of this decision was denied September 2, 1909.

These departmental decisions were, on September 14, 1909, suspended by order of the Secretary of the Interior, because of a suit instituted by Williams in the Supreme Court of the District of Columbia to restrain further action of the Secretary. The order was, however, revoked March 11, 1910. On March 16, 1910, by further direction of the department, the local officers were again directed to suspend action on the entry of plaintiff, for the reason that the litigation had been reinstated, and on March 17th the department directed the Commissioner to reinstate plaintiff's entry. His entry was again canceled July 20, 1910. On March 27, 1911, plaintiff filed application for reinstatement of his entry under Act March 4, 1911, c. 272, 36 Stat. 1356. To this there was subsequently a protest by Newman, who had, on April 4, 1910, filed an application to make homestead entry on the land. The application for reinstatement was rejected by the Commissioner August 31, 1911. The order rejecting the application was later, namely, on October 16, 1912, reversed by the Secretary of the Interior, and a hearing was directed to be had between the parties, Williams and Newman, with reference to the alleged cultivation of the land by Williams. A hearing was accordingly had before the register and receiver, beginning March 15, 1913, resulting in a decisive rejection of the application of plaintiff for reinstatement. Plaintiff appealed from this decision, which was affirmed by the Commissioner February 14, 1914. Plaintiff again appealed to the department, with like result, the decision being rendered July 31, 1914. This ended the protracted litigation in the land office. The defendant Newman was allowed to proceed with his homestead entry, and subsequently obtained his final certificate and patent.

J. K. Weatherford, of Albany, Or., for plaintiff.

John K. Kollock and A. S. Dresser, both of Portland, Or., for defendants.

WOLVERTON, District Judge (after stating the facts as above). The crucial question involved in this controversy is whether the plaintiff is entitled to a patent under the proviso of section 7, following the amendment of section 2301, R. S., 26 Stat. 1099 (Comp. St. § 4589), which reads:

"Provided, that after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber culture, desert land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him; but this proviso shall not be construed to require the delay of two years from the date of said entry before the issuing of a patent therefor."

It is the contention of plaintiff that what he did in making his final proof, and what the register and receiver did with reference thereto, was tantamount to the issuance of such final receipt, and that, more than two years having elapsed, and there having been no contest or protest interposed to the entry in the meanwhile, he was, and is now, entitled to the patent, by which all further controversy respecting the title to the land comprised by the entry is precluded.

Preliminarily, it should be premised that the Secretary of the Inte-

rior, within the functions of his office, and the Land Department, are intrusted with the sale and disposition of the public lands of the general government. The register and receiver are constituted officers of primary jurisdiction respecting the acquirement of public lands through the homestead and other like laws adopted by Congress for the sale and disposition of such lands. From these officers an appeal may be had to the Commissioner of the General Land Office, and from him to the Secretary of the Interior himself. Beyond this, a revision may be had by the President. So that there is provided a special tribunal, of a quasi judicial character, for determining the rights of all persons who seek to avail themselves of the laws of Congress for the acquirement of any of the public lands of the general government. Vance v. Burbank, 101 U. S. 514, 519, 25 L. Ed. 929; United States v. Minor, 114 U. S. 233, 243, 5 Sup. Ct. 836, 29 L. Ed. 110.

[1, 2] It has long since become settled law that the findings and judgment of the officers of the Land Department involving questions of fact only are conclusive, and cannot be otherwise inquired into, except upon appeal from one officer to another in that department. On the other hand, however, if error or mistake is committed in the construction or application of the law in any case, or if fraud is practiced upon such officers, or if they themselves are chargeable with fraudulent practices, their rulings may be annulled by the courts when a controversy founded upon their decisions arises between private parties. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Shepley et al. v. Cowan et al., 91 U. S. 330, 340, 23 L. Ed. 424; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570; Calhoun v. Violet, 173 U. S. 60, 63, 19 Sup. Ct. 324, 43 L. Ed. 614; and United States v. Minor and Vance v. Burbank, supra.

[3] There is no question of fraud presented here, either as it pertains to the defendant or the officers of the Land Department. The questions involved by the presentation of final proofs, namely, of settlement, time of residence, cultivation, improvements, and the like, are purely questions of fact, which were for the determination of the officers of the Land Department, and their decisions respecting such questions become final and conclusive upon the courts, under the law as above stated.

[4] Prompt action on his final proofs was not accorded the plaintiff, but the final determination of the officers of the Land Department was to reject his claim, the delay being caused by a suspension of action by the department because of the existence of supposed frauds affecting the claims of plaintiff and others in that locality. The effect of the suspension was to postpone a decision respecting plaintiff's final proofs, but not to deny him such decision ultimately. There can scarcely be a doubt of the authority of the Secretary of the Interior, under sections 441, 453, and 2478 of the Revised Statutes (Comp. St. §§ 681, 699, 5120), to suspend action in proceedings before the Land Department, in the interest of a just administration of the public lands, with a view to inquiring into any question of fraud attending the acquirement of such lands by private persons. Knight v. U. S. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974.

[5] Nor will the courts ordinarily interfere with the Land Department in the administration of the public lands, while the same are subject to disposition under acts of Congress intrusting such matters to that branch of the government; or, to state the proposition more concretely, while the land is under the control of the Land Department, prior to the issue of patent, the courts will not interfere with such departmental administration. Garfield v. United States ex rel. Goldsby, 211 U. S. 249, 260, 29 Sup. Ct. 62, 53 L. Ed. 168; United States v. Detroit Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; and Love v. Flahive, 205 U. S. 195, 27 Sup. Ct. 486, 51 L. Ed. 768.

[6] In Lane v. Hoglund, 244 U. S. 174, 37 Sup. Ct. 558, 61 L. Ed. 1066, the court required the Secretary of the Interior to issue a patent where two years had elapsed after the issuance of the receiver's receipt upon final entry, there being at the time no pending contest or protest against the validity of such entry.

Had final receipt issued in this case at the time final proofs were made, that case would have been controlling here. But such is not the case. Nor can it be maintained, we think, that what was done was the equivalent of the issuance of such receipt. Before such receipt could have been properly issued, a decision of the register and receiver at least approving the proofs rendered was required. The decision was specially withheld under the direction of a special agent representing the Land Department until inquiry could be made touching supposed fraudulent transactions affecting this and other claims in the same vicinity. Nor was any decision rendered by these officers until after the Reder contest was heard in January, 1908, when they recommended that plaintiff's entry be held intact. This decision was on appeal reversed by the Commissioner, and plaintiff's entry was held for cancellation. An appeal was prosecuted to the Secretary of the Interior, who affirmed the holding of the Commissioner, and the entry was canceled. Beyond this, it is unnecessary to follow the proceedings reinstating the entry, and its ultimate cancellation by the Land Department, including the application for reinstatement under the act of March 4, 1911, and the final disposition of the application.

It is sufficient to say that, in all these contests and proceedings, the plaintiff was accorded a hearing, and was present, either by himself or counsel, and the officers of the Land Department extended to him the utmost opportunity for fully presenting his case upon the facts attending his final proofs, but with the final result that his entry was rejected and canceled, and that upon the ultimate issue touching whether he had cultivated the land during the time of his alleged occupancy as required by the homestead law as applicable to lands within the limits of the old Siletz Indian reservation. There was nothing in all these proceedings that can, by the most liberal view to be entertained respecting them, lead to the conclusion that there was action had or taken anywhere by the Land Department which was the equivalent of the issuance of the final receipt. What the receiver said about the proofs being good or sufficient can in no sense be construed as a decision by the register and receiver touching the sufficiency of such proofs. While there was great, and apparently unnecessary, delay at times by the of-

ficers of the Land Department in furthering the claim of plaintiff to final issue, it cannot be said that these officers, through misconduct or neglect, ultimately denied him the rights to which he was entitled within the doctrine of Lytle v. Arkansas, 9 How. 314, 333, 13 L. Ed. 153, and like cases.

The case of Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482, is not in point. That case turned upon the cancellation of an entry without notice to the entryman, and upon a mistaken construction of the law. It was not a case, as this is, involving purely questions of fact which have been passed upon and settled by the Land Department.

It is unnecessary to review other cases cited by plaintiff. If the line of distinction between matters of law and questions of fact as dealt with by the Land Department is closely followed, it will be found that generally the adjudications are in accord.

It results that the complaint must be dismissed; and it is so ordered.