Argued March 10, affirmed April 27, 1920.

# NEIS *v.* EBBE.

(189 Pac. 417.)

**Public Lands—Suspension Pending Investigation of Entry for Fraud Held a "Proceeding Against Entry" Barring Patent.**

1. A homestead entryman's grantee *held* not entitled to a patent where the Secretary of the Interior had ordered the Commissioner of General Land Office to investigate the entry and such official had by order suspended it pending an investigation upon information of fraud, such action having been instituted within two years after issuance of patent to the original entryman, and constituting a proceeding against the entry within Act Cong. March 3, 1891 (U. S. Comp. Stats., §§ 5113, 5116).

**Public Lands—Relinquishment and Proceedings Against Fraudulent Entry Held to Give Land Department Authority to Consider Land Vacant.**

2. Where a final receipt had been issued to a homestead entryman and such entryman had granted the land to plaintiff, that the original entryman and plaintiff had relinquished and quitclaimed their interest to the government, which was investigating the entry and had suspended issuance of patent thereto on the ground of fraud, gave the Land Department authority to consider the land vacant, and to allow a homestead entry on the part of a third person.

**Public Lands—Refusal to Allow Entry cannot be Taken Advantage of by One Who has Relinquished.**

3. Where a homestead entryman's grantee after relinquishment by the original entryman and quitclaim by the grantee to the government procured others to apply for homestead entry on the land, the refusal of the government to allow such entry could not be taken advantage of by the original entryman's grantee nor reinvest him with any interest in the land.

**Public Lands—Grantee of Original Entryman may Relinquish.**

4. An original homestead entryman's grantee can relinquish his claim to the land to the government to the same extent as could the original entryman, and such relinquishment is authorized by the federal statute.

From Lincoln: JAMES W. HAMILTON, Judge.

Department 2.

The plaintiff brings this suit to have defendant, Mrs. Florence M. Ebbe, declared a trustee of a certain quarter-section of land for his use and benefit.

A patent to the land was issued from the United States to Florence M. Creitz, now Florence M. Ebbe. The trial court rendered a decree in favor of defendants, from which plaintiff appeals.

The plaintiff, Kola Neis, claims title to the land in question as grantee from George Rilea, who filed homestead entry under the laws of the United States for the tract, and on November 4, 1901, made final proof at the land office at Oregon City and received a final receipt therefor. Plaintiff asserts that there was no protest or contest filed against the homestead within the period of two years after the date of the final receipt.

The following facts appear from the record:

On October 1, 1900, George Rilea made homestead entry number 13,091, serial 0911, for the land involved herein. November 4, 1901, he made final proof therefor and a final certificate was issued to him. On July 22, 1902, Rilea executed a deed of the land to plaintiff Neis, which was duly recorded in Lincoln County, Oregon, July 25, 1902. On March 6, 1903, a special agent was instructed by the General Land Office to make investigation of all commuted homestead entries within certain townships, including the land in question. On March 26, 1903, all entries for this class of land were suspended by the General Land Office upon direction of the Secretary of the Interior. On August 19, 1903, Special Agent Hobbs made a report, which was received in the General Land Office August 25, 1903, reciting that he had investigated the entries in township 9 south, range 10 west, including this entry, and stating clearly that all of the entries were fraudulent. After still further investigation this special agent telegraphed the General Land Office on November 4, 1903, requesting that no patents be issued on home-

stead entries for this class of land. This all took place within the two-year period after the date of the final certificate issued to George Rilea. Afterward, by a written report dated November 9, 1903, the special agent presented formal specific charges against the entry of Rilea and other entries.

On July 10, 1909, the plaintiff and his wife executed a quitclaim deed to the United States, covering the land in question, which was delivered to Dye Wade under an agreement by which Wade was to file the relinquishment, secure a filing on the land if he could, and pay the plaintiff $2,500 in case he secured a patent.

On August 31, 1909, Wade appeared at the office of the Register of the land office in Portland and filed this deed, together with a certified copy of the deed which plaintiff had secured from Rilea, the mortgage from Rilea to W. N. Jones, a satisfaction of the same mortgage, and a certificate of the county clerk of Lincoln County, Oregon, to the effect that the county records then showed the title to the land to be in the United States. Wade's application was rejected by the General Land Office February 25, 1911, which action was affirmed upon appeal to the Department of the Interior.

On April 10, 1907, George Rilea made a relinquishment of his rights in the land and at the same time one Gooch filed his application to make homestead entry for the same. Upon the filing of the relinquishment the claim of Rilea was canceled by the Register and Receiver, and on May 17, 1907, Neis filed a protest against the cancellation and relinquishment and asked for the patent to be issued on the receipt therefor issued in favor of George Rilea. The Commissioner of the General Land Office denied the request of Neis, and upon appeal to the Secre-

tary of the Interior, the claim was re-established. On April 29, 1910, the Commissioner of the General Land Office canceled the entry of Rilea and dismissed the application of Neis. Testimony on the charges filed against the Rilea entry was taken before a notary at Toledo, Oregon. On August 3, 1909, a final hearing was had thereon at the United States Land Office in Portland, Oregon. On November 24, 1909, a decision of the Register and Receiver was rendered recommending the cancellation of the Rilea homestead entry. On April 29, 1910, a decision was rendered by the General Land Office, sustaining the charges of fraud against Rilea's entry and canceling the same. In the letter of the Honorable Commissioner it was stated:

"If, as you state, Neis has conveyed his claim to the government, it would seem that neither of the contestees (Rilea or Neis) stands in a position to assert title, inasmuch as the reinstatement of the entry after Rilea's relinquishment was based on Neis's rights arising from Rilea's deed to him."

This decision was affirmed by the Secretary of the Interior September 24, 1910. On September 25, 1909, the defendant, Florence M. Ebbe, then Florence M. Creitz, filed a homestead application for the land. On November 25, 1912, Mrs. Creitz made a second homestead application for the land. On June 22, 1914, Rilea was notified of the allowance of Mrs. Creitz's entry, 03692. She made final proof therefor and on September 13, 1915, a patent to the land was issued to her.          Affirmed.

For appellant there was a brief over the name of *Messrs. Weatherford & Wyatt,* with an oral argument by *Mr. James K. Weatherford.*

For respondents there was a brief over the names of *Mr. Oscar Hayter* and *Mr. Sidney J. Graham,* with an oral argument by *Mr. Hayter.*

BEAN, J.—It is the contention of plaintiff that George Rilea having made a homestead entry for the land in question and on November 4, 1901, made final proof therefor and received a final certificate, and Rilea having on July 22, 1902, executed a deed of conveyance of the land to plaintiff Kola Neis, which was filed for record on July 25, 1902, in Lincoln County, Oregon, and also that no protest or contest was filed against the homestead entry within the period of two years after the date of the final receipt; that the officers of the General Land Office and Department of the Interior of the United States had no jurisdiction to cancel the homestead entry of Rilea, but should have issued a patent for the land to him; and therefore title to the land passed to plaintiff by virtue of the Rilea deed.

It appears that the land is a part of the former Siletz Indian Reservation and that on March 25, 1903, all of the entries therein were suspended by the order of the Commissioner of the General Land Office upon the direction of the Secretary of the Interior that such entries be investigated, upon information of fraud in connection therewith. After such investigation was made and a hearing was had the entry of Rilea was canceled. A report of the special agent was made August 19, 1903, and received by the General Land Office August 25, 1903, which was unfavorable to all of the entries for this class of land. On November 4, 1904, Special Agent Hobbs telegraphed the General Land Office requesting no patents to be issued for any such land. Formal written report of the fraudulent character

of the Rilea claim and twenty-two others was made November 9, 1903.

It therefore seems that before the two years had elapsed after Rilea's final receipt had been issued, the Department, pursuant to information filed and on account of objection raised by the officers under a declaration of doubt and suspicion as to the validity of the claim, was actively engaged in the investigation of the facts concerning the good faith and validity of the claim of Rilea.

It should be borne in mind that on July 10, 1909, the plaintiff and his wife executed a quitclaim deed to the United States, covering the land in question, which was duly recorded and filed in the local land office. Also on April 10, 1907, George Rilea in writing relinquished his right to the land, and the relinquishment was filed in the local land office.

The United States statute provides as follows:

"That when a pre-emption, homestead, or timber culture claimant shall file a written relinquishment of his claim in the local land office, the land covered by such claim shall be held as open to settlement and entry without further action on the part of the Commissioner of the General Land Office": 6 Fed. Stats. Ann., § 1, p. 300.

In the case of *Lane* v. *Hoglund,* 244 U. S. 174 (61 L. Ed. 1066, 37 Sup. Ct. Rep. 558), it is said:

"The statute makes it very plain that if at the expiration of two years from the date of the Receiver's final receipt there is 'no pending contest or protest' against the entry its validity no longer may be called in question—in the words of the act, 'The entryman shall be entitled to a patent, * * and the same shall be issued to him.' "

Can it be said that at the end of the two-year period after the date of the Receiver's final receipt issued to Rilea there was no protest pending against

his entry? The very life or validity of the claim of Rilea had been challenged by a report filed which was adverse to the same, and it was doubted and under investigation by the General Land Office by the order of the Department of the Interior.

The seventh section of the act of Congress of March 3, 1891, Chapter 561 (26 Stat. at L. 1095, 1099, Comp. Stats. 1916, §§ 5113, 5116), has the following provision:

"That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber culture, desert land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him."

It will be noted that the act provides for no particular form of a protest to be made. In *Lane* v. *Hoglund*, 244 U. S. 174 (61 L. Ed. 1066, 37 Sup. Ct. Rep. 558), the Supreme Court of the United States, speaking by Mr. Justice VAN DEVANTER, referring to this act, discussed the question:

"What, then, is the 'pending contest or protest' which is to exclude a subsisting entry from this statute of limitation and repose? Is it some proceeding which is begun, ordered, or set in motion in the interest of another claimant or of the public to test or determine the validity of the entry? Or may it be a mere report, letter, or other communication, confidential or otherwise, which has not been and may never be acted upon, which may be neither known nor accessible to the entryman, or which may be so general, vague, or intemperate in its statements as not in itself to merit attention? * * In short, the reference is to a proceeding against the entry and not to some communications which at most

is only suggestive of the propriety of such a proceeding and may never become the basis of one.''

The opinion appears to approve the instructions of May 8, 1891, 12 Land Dec. 450, ''wherein each term [contest or protest] is spoken of as meaning a 'proceeding' under the Rules of Practice to cancel and defeat an entry. * * '' The same view is expressed in the supplemental instructions of July 1, 1891, 13 Land Dec. 1.

In *Lane* v. *Hoglund,* within two years after the date of the final certificate, a deputy forest supervisor reported to the General Land Office, recommending the cancellation of the entry, ''on account of nonresidence and lack of cultivation.'' No action upon this report was taken until after the expiration of the two-year period. Almost three years after the date of the Receiver's receipt the Commissioner of the General Land Office ordered a proceeding in the local land office to determine the question of residence upon the land.

1. In. the present case the Secretary of the Interior had received information as to the fraudulent character of the entry of Rilea and others, and ordered the Commissioner of the General Land Office to investigate the entry. That official had by order suspended the Rilea entry, and the machinery of the government had been put in motion for an investigation of the entry upon information of fraud in connection therewith. A proceeding against the entry was pending. All of this was prior to the expiration of the two years. We think there is a marked distinction as to the facts between the case at bar and the case of *Lane* v. *Hoglund* relied upon by plaintiff.

In the case of *Menasha Wooden Ware Co., Assignee,* v. *William Gribble,* published in 37 Land Dec. 329, the Supreme Court of the District of Columbia considered the question of "protest" under the act. In that case the Commissioner of the General Land Office had ordered an investigation of the claim of Gribble among others and instructed a special agent to carry it on. No specific charges were made. The investigation was ordered for the reason that in several claims the same witnesses had been used, which caused suspicion of fraud. The court used the following language:

"The question then is whether this constituted a contest or a protest. It was not a *contest* in the sense that a special charge had been made, much less that notice thereof had been given to the claimant, so that it might be met by him. Neither was it a *protest* in the sense that a specific ground had been pointed out for the basis of the protest and the claimant informed thereof. But are either of these necessary? There was a solemn declaration by the department that the circumstances surrounding the claim were such as to beget suspicion and to call for a thorough investigation and that in the meantime the patent ought not to be granted. * *

"As defined by Webster, a protest is 'a solemn declaration of opinion, commonly a formal declaration against some act.' Is not that exactly what this is? It was the first step in a proceeding calculated to test the validity of the claimant's right to a patent. That step having been taken within the two years, the statute of confirmation did not operate upon this claim."

Section 7 of the act of March 3, 1891, does not indicate that it was enacted for the purpose of curtailing or changing the manner or form of conducting the proceedings in the General Land Office, or before the Department of the Interior, in the case

of a contest or protest against the validity of any entry; but rather for the purpose of prompting action to be taken within the time prescribed. Where the specific facts constituting the fraud are stated, which, if true, would defeat the entry, and the Commissioner of the General Land Office has ordered the entry suspended and investigated, it would seem that such protest would be sufficient within the meaning of the statute to prevent the running of the same, although such protest does not contain all of the data necessary for a hearing. The case comes within the rule suggested by the United States Supreme Court in the Hoglund case. It was a proceeding "ordered or set in motion in the interest of * * the public." See, also, Acting Secretary Ryan's instruction of June 3, 1904, in which it is said:

"To be either a contest or a protest there must be a charge of specific facts which, if true, would defeat the entry and upon which the entryman or party affected may take issue and demand a hearing. In cases investigated by special agents of your office, where the agent has reported sufficient facts to justify cancellation of the entry, such report is a proceeding that prevents confirmation of an entry under the act": 33 Land Dec. Dept. Int. 10.

The trial court held that the entry of Rilea and the interest of plaintiff Neis in the land had ceased to exist, on account of the relinquishment of Rilea and the deed from plaintiff, Neis, and wife to the government.

2. The entry of Rilea was suspended within the period prescribed by the statute of repose above quoted, and proceedings were then instituted and being carried on. They were concluded after some delay, caused by the records being used in the federal court in the matter of the indictment and prose-

cution of one W. N. Jones. After a thorough investigation and regular hearing the entry was canceled of record. All of these things, plus the fact that Rilea had relinquished all his interest in the land which merely shaped the Land Office records, and also plus the fact that Neis had quitclaimed and relinquished to the government of the United States all the interest in the land conveyed to him by Rilea, gave the Land Department of the United States authority to consider the land vacant and allow the homestead entry of Florence M. Creitz (now Ebbe).

It is the contention of the plaintiff, as we understand it, that Rilea attempted to make his relinquishment in the interest of one Gooch, who applied to make homestead entry for the land; that the deed of plaintiff to the government was executed in order that Dye Wade might file upon the land; and that as the Land Office officials did not accept the relinquishment or the deed for the purpose intended, and allow either the application of Gooch or Wade, there was no acceptance thereof.

3. If there was any error on the part of the Land Office officials in denying the application of Gooch or refusing the application of Dye Wade to make a homestead entry for the land, they were the persons to take exception to such ruling; and the fact that their applications were denied would not reinvest plaintiff, Neis, with any interest in the land or reconvey any interest to him or cancel or annul the deed of conveyance which he executed to the government. It should be remembered that the legal title to the land remained in the government of the United States until patent therefor was issued to Creitz; therefore, it was not necessary for the deed from Neis to the United States to convey any legal title or to be of any more force than to relinquish

96 Or.—11

his claim. It seems that everything necessary for an acceptance of the Neis deed or relinquishment was done that could be accomplished by the United States Land Office officials, and that such acts were within the scope of their authority.

4. Neis by virtue of the quitclaim deed from Rilea obtained no better right to the land than Rilea theretofore had. If Rilea, prior to the execution of the deed to Neis, could relinquish his claim to the land, which he undoubtedly could, then Neis thereafter could perform a like act. Such transactions are of common occurrence in the United States Land Office, and we think the same are authorized by the United States statute above referred to.

Plaintiff cites and relies upon the case of *Gildner v. Hall* (D. C.), 227 Fed. 704. In that case the Land Department exercised jurisdiction in a contest initiated by a private person against an entry more than six years after the date of the Receiver's final receipt. There was no relinquishment of the entry by the claimant as in the case at bar.

Our attention has not been directed to any case where such an entryman has received the benefit of a patent to land issued by the government of the United States after the entryman or his grantee had filed a relinquishment of his interest in the land in the local land office, as was done in the present case. We think no such case can be found.

It is unnecessary to pass upon the question of the efficacy of the contest instituted by the government officials against the entry of Rilea taken as standing alone.

The decree of the lower court is affirmed.

AFFIRMED.

BURNETT, JOHNS and BENNETT, JJ., concur.